## THE STATE OF KANSAS v. F. D. WAUGH.

LETTER TO JUDGE, *Insulting and Contemptuous.* Such language as the following, written and sent through the mail by the plaintiff in an action to a trial judge, in a matter still pending before him: "I did not deem it necessary to go to you with a body of friends and creditors to impress upon you how important it was that I should have the money that was tied up by the garnishment, . . . and exact of you a promise to rule in my favor. . . . I supposed ,that surely we would get some chance for hearing. I did not think it possible that our judge could be so warped by such a procedure as to entirely overlook the interests of a poor man, and ride over him roughshod, and decide in favor of a corporation. . . . Will you kindly help me, and inform me what I can do, that I may know that you are not the unjust judge that would not give a poor man the same chance that a bank has, and you will lift a load from my heart? And the most unkind act of all was, when we had not even had a chance to be heard, was for you to allow an attorney to tax with costs," is disrespectful, insulting, and contemptuous.

### Appeal from Cowley District Court.

ON November 11, 1893, F. D. Waugh, of Arkansas City, Cowley county, filed in the district court of that county his petition, praying judgment against the Stauber & Uhl Building Company, a corporation, for the sum of $1,255.28 upon account. On November 13, 1893, service of summons was made upon the corporation. On the date of the filing of the petition, F. D. Waugh filed in the court his affidavit in garnishment against F. M. Strong and the Home National Bank. On the same day, summons in garnishment was served on the garnishees.

On November 23, 1893, the Home National Bank filed its answer in the district court, denying, under oath of its president and managing officer, that it was in anywise indebted to the Stauber & Uhl Building Company. Thereafter, F. M. Strong, garnishee, filed in the court his answer in garnishment, denying he was indebted to the defendant corporation, but stating he was in doubt as to his liability to the

corporation, and thereupon made a detailed statement under oath, and submitted the question of his liability to the court.

On November 29, 1893, F. M. Strong, garnishee, filed in the district court his motion to make the First National Bank of Arkansas City, George W. Robinson, receiver of the First National Bank of Arkansas City, —— Clum and —— Dingman, partners as Clum & Dingman, of Washington, D. C., and H. P. Farrar, of Arkansas City, parties defendant in the main action, in order that the court might fully determine and adjudicate the matter as to whether the garnishee was indebted to the defendant corporation, or to the First National Bank of Arkansas City, or George W. Robinson, receiver of the First National Bank of Arkansas City, or H. P. Farrar, of Arkansas City, or Clum & Dingman, of Washington, D. C. On January 6, 1894, H. P. Farrar waived the issuance of summons as prayed for in the motion, and filed his disclaimer to any interest in the funds in the hands of F. M. Strong, garnishee, and claimed that all his prior interest in the funds in the hands of the garnishee, by virtue of the contracts mentioned in the garnishee's answer, had been transferred to the First National Bank of Arkansas City, and the receiver thereof, long before the service of the garnishment process in the action.

On January 1, 1894, George W. Robinson, receiver of the First National Bank of Arkansas City, entered his appearance in the case as a defendant, and claimed under the answer of the garnishee, F. M. Strong, that he, as receiver, was entitled to the money and funds in the possession of F. M. Strong, garnishee, as disclosed by the answer of the garnishee, claiming the money was not the subject of garnishment, and praying for an order from the court directing F. M. Strong, garnishee, to pay the receiver the money in his hands, upon the grounds and for the reasons set forth and stated in the contract attached to and made a part of the answer of F. M. Strong. Notice of the motion being filed and set for hearing was served upon the attorney of F. D. Waugh. On January 8, 1894, Waugh took judgment by default against the

Stauber & Uhl Building Company, and the court ordered the garnishment proceedings to be continued and preserved for the further order of the court. On the same day Waugh filed his motion praying for an order directing F. M. Strong, garnishee, to pay into court for his benefit the amount of his judgment against the Stauber & Uhl company. Notice of the motion being filed, the time for the hearing thereof was served upon F. M. Strong.

On January 9, 1894, the motion of said Waugh requiring Strong, garnishee, to pay into court the amount of plaintiff's judgment against the Stauber & Uhl Building Company came on for hearing and was overruled. At the same time the motion of George W. Robinson, receiver of the First National Bank of Arkansas City, praying for the release of the funds in the hands of F. M. Strong, garnishee, came on for hearing, and, upon consideration of the motion, the court sustained the same. Thereupon, F. D. Waugh, by his attorney, asked the court to require the garnishee, F. M. Strong, to hold and retain in his possession the moneys then in his possession, as disclosed by his answer, for the purpose of settling the judgment of the plaintiff and costs, together with such other costs as might accrue therein, pending an appeal of the action to the supreme court. The court allowed this motion, and directed F. M. Strong, garnishee, to keep and hold in his possession, for the use and benefit of F. D. Waugh, until further order of the court, the sum of $1,525. At the same time, by the consent of all parties, the sum of $111.70 was ordered to be paid by F. M. Strong, garnishee, out of the funds in his possession, to Clum & Dingman, attorneys, of Washington, D. C., to satisfy their attorney's lien. Thereafter, on the 17th day of January, 1894, while the district court of Cowley county was still in session, and Judge Jackson was presiding, F. D. Waugh wrote a letter to the district judge, of which the following is a copy:

"F. D. WAUGH, DEALER IN LUMBER AND BUILDING MATERIAL.
OFFICE: 111 Fifth avenue, east of Home National Bank.

"Hon. Judge Jackson, Winfield, Kas.:

"DEAR SIR—I have several times, while waiting in the courtroom, listened to your rulings, and had been very favor-

ably impressed with your fairness, so much so that, in the great and important case to me, in which almost life and death is meant to me, I did not deem it necessary to go to you with a body of friends and creditors to impress upon you how important it was that I should have the money that was tied up by the garnishment of the Stauber & Uhl fund, in the hands of Mr. F. M. Strong, and exact of you a promise to rule in my favor, though it would be contrary to all rulings and the statutes on the points at issue. I supposed that surely we could get some chance for a hearing. I did not think it possible that our judge could be so warped by such a procedure as to entirely overlook the interests of a poor man, and ride over him roughshod, and decide in favor of a corporation, just because they pleaded that they must have the money to open the bank with.

"Now the facts in my case are these: Had I not stood in the breach, and furnished my material to have finished that contract, after the First National Bank could not do it, the contract would have been taken out of the contractor's hands, and finished by the government, and they would have thereby have used nearly if not all of the money that the said national bank now gets, and I would ask why I am not entitled to a chance to be heard, as well as the bank. The loss of this $1,225.28 will ruin me. I am at an age that I cannot recover from it. Why must I be compelled, at great cost and long process of years, to go to the supreme court to get back to where I can even get a hearing? Now, judge, for God's sake, is there not some way that this can be avoided, and I get a hearing in your court, and that I can get my money released, so that I can open up and do business and not be ruined? I ask this in the name of justice; I ask this for my creditors; and lastly, though not least, I ask it for my little ones dependent upon me. Will you kindly help me, and inform me what I can do that I may know that you are not the unjust judge that would not give a poor man the same chance that a bank has, and you will lift a load from my heart? And the most unkind act of all was, when we had not even had a chance to be heard, was for you to allow an attorney to tax with costs. I cannot believe that you would have allowed all this had you known anything at all of our rights in this matter. Hoping to hear from you, and that this matter can be fixed at an early date, I am,

Very truly,     F. D. Waugh."

On January 18, 1894, an information for contempt of court was filed in the district court of Cowley county by the county attorney thereof, charging F. D. Waugh with contempt of court. On January 18, 1894, a warrant was issued out of said court for his arrest, and on January 19, 1894, he was brought into court. The hearing of the case was continued to January 22, 1894. The defendant waived arraignment, and pleaded not guilty, and also waived the introduction of any evidence on the part of the state. He was then sworn on his own behalf. Thereupon the court found him guilty of contempt, and fined him $50 and costs of case; and further ordered, that he be committed to the jail of Cowley county until the fine and costs were paid. He appeals.

*Z. T. Armstrong*, for appellant.

*John T. Little*, attorney general, *George W. Scott*, county attorney, for The State; *W. P. Hackney*, of counsel.

The opinion of the court was delivered by

HORTON, C. J.: The district judge on the receipt of the letter sent to him on the 17th of January, 1894, by F. D. Waugh, construed it as a contempt, and, after a hearing upon an information filed by the county attorney, adjudged Waugh guilty of a contempt, fined him $50, and ordered him to be committed until the fine and costs were paid. The contention is, that Waugh was not guilty of any contempt; that he should have been discharged upon his statement "that he had no intention of contempt of the court or anyone else," and that there was no case pending before the court to which the letter referred or was in any way connected. The rulings of the district court in the case of Waugh against the Stauber & Uhl company were referred to in the letter, and the writer said, among other things:

"I did not deem it necessary to go to you with a body of friends and creditors to impress upon you how important it was that I should have the money that was tied up by the garnishment, . . . and exact of you a promise to rule in

my favor. . . . I supposed that surely we would get some chance for a hearing. I did not think it possible that our judge could be so warped by such a procedure as to entirely overlook the interests of a poor man, and ride over him roughshod, and decide in favor of a corporation. Will you kindly help me, and inform me what I can do that I may know that you are not the unjust judge that would not give a poor man the same chance that a bank has, and you will lift a load from my heart? And the most unkind act of all was, when we had not even a chance to be heard, was for you to allow an attorney to tax with costs."

The letter was evidently written for the purpose of complaining of the rulings of the trial judge, and of influencing the course of justice in the decision of a cause. It also contained severe imputations against the trial judge, and was an attempt at least to obstruct, prevent and embarrass the administration of justice. Its language was disrespectful, insulting, and contemptuous. (*In re Pryor*, 18 Kas. 72.) It is true, when Waugh came into court, he disavowed any intentional disrespect to or contempt of the court, but admitted he wrote and sent the letter. The trial judge might have discharged Waugh after his disavowal, upon the ground that his disappointment being great over an adverse decision, he had written stronger than he had intended, in a momentary outbreak of anger. Generally, as was said in *In re Pryor*, supra, "A judge will wisely overlook any mere hasty, unguarded expression of passion or disappointment, even though disrespectful, or simply notice it by a reproof." But the mere denying by Waugh of any disrespectful or insulting design in the letter reflecting upon the trial judge does not relieve him of responsibility for the language he actually used. It is not for him or his counsel to construe or state the effect of the language. (*United States v. Late Corporation of Latter-Day Saints*, 21 Pac. Rep. 524; *McCormick v. Sheridan*, 21 id. 24.) We cannot say it was the duty of the trial court, upon his mere disavowal, to order his discharge. The question of the advisability of the court's action is not the matter of our consideration. It is the question of power, and whether

the letter was, in fact, a contempt. The matter referred to in the letter was still pending before the court. Evidently Waugh so understood it, because his purpose in writing the letter seems to have been to obtain another hearing before the court. He testified, among other things, as follows:

"Ques. One of the objects you had in writing the letter was simply to ask if there was any way that the matter could be disposed of without going to the supreme court? Ans. That was my whole object.

"Q. You had been advised by your attorney before this that was the only thing left for you? A. At the meeting Monday night, that was the advice my attorney gave me.

"Q. You are anxious and desirous that an order should be made whereby you would get your money? A. Yes, sir; I was very anxious.

"Q. It was not material to you how it was obtained, so long as it was done for you? A. Yes; I only wanted justice. I felt it was just that I should have it. I couldn't feel any other way."

Again, it appears from the record that the case of Waugh against the Stauber and Uhl company had not passed beyond the jurisdiction of the trial judge; that the term of the court had not expired, and that the order made by the court was subject to change or modification after the letter was received. Further, the fund in controversy and concerning the disposition of which the letter was written by Waugh was ordered by the court to be retained by the garnishee for further proceedings. The case was under the full control of the court, at least until the final adjournment for the term. The judgment will be affirmed.

All the Justices concurring.