In re SUPRENANT.

(District Court, N. D. New York. October 21, 1914.)

1. PARTNERSHIP (§ 237*)—DISSOLUTION—SALE OF INTEREST TO CONTINUING PARTNER—EFFECT.

Where one of two partners sells his entire interest in the property of the firm to the other partner, the latter takes an absolute title to the property, subject to no lien in favor of partnership creditors, and though they may have equities as against individual creditors of the partners, they cannot enforce them except through proceedings to wind up the firm and distribute its assets.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 489, 490, 493, 494; Dec. Dig. § 237.*]

2. PARTNERSHIP (§ 264*)—DISSOLUTION—SALE OF INTEREST TO ONE PARTNER.

A sale by one of two partners of his entire interest in the firm property to the remaining partner, dissolves the firm.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 608, 614, 617; Dec. Dig. § 264.*]

3. PARTNERSHIP (§ 279*)—DISSOLUTION OF FIRM—RIGHTS OF FIRM CREDITORS.

Where a firm is dissolved by a sale by one partner of his entire interest in the firm property to the other partner, such dissolution does not affect the liability of the partners to firm creditors, except so far as they may be released for a consideration.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 636, 637; Dec. Dig. § 279.*]

4. BANKRUPTCY (§ 196*)—PARTNERSHIP—DISSOLUTION OF FIRM—PARTNERSHIP CREDITORS—SALE OF PROPERTY—CUSTODY OF BANKRUPTCY COURT—INTERFERENCE.

Where a firm was dissolved by a sale of the interest of one of the partners to the other more than four months before the latter became a bankrupt, and in the meantime firm creditors secured judgments against the firm, they were not entitled to enforce executions against the property which had previously belonged to the firm, and which had passed into the custody of the bankruptcy court, but were bound to enforce their rights and equities in the bankruptcy proceeding.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 306–316; Dec. Dig. § 196.*]

In Bankruptcy. In the matter of F. Rae Suprenant, bankrupt.

Motion by trustee in bankruptcy to continue an injunction granted on order to show cause restraining the sheriff and certain judgment creditors of Moody and Suprenant from selling on execution or interfering with certain personal property formerly owned by the firm or copartnership of Moody & Suprenant, but which property came into the sole possession of Suprenant as alleged owner more than four months prior to the filing of the petition in bankruptcy against Suprenant, by the purchase thereof by Suprenant, he paying a sum in cash and assuming the payment of all the firm debts and liabilities and thereafter continuing the business in his own name. All the facts will appear in the opinion. Motion granted.

Henry W. Williams, of Glens Falls, N. Y., for trustee.

Chambers & Finn, of Glens Falls, N. Y., for judgment creditors.

RAY, District Judge. From about March 10, 1913, C. W. Moody and F. Rae Suprenant (Suprenant being the above-named bankrupt),

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

were copartners doing business under the firm name of Moody & Suprenant. More than four months prior to the filing of the petition in bankruptcy by Suprenant he bought out the entire interest of Moody in the firm's property, his sole partner in the business, and thereafter continued the business openly in his own name, having gone into sole and exclusive possession of all the firm's property, and treating it as his own. As part of the consideration Suprenant assumed and agreed to pay all the firm's debts and liabilities. In continuing this business in his own name he purchased goods to replenish the stock, some for cash, some on credit, and some was partly paid for in cash and credit given for the balance. He paid something on the old debts of the firm pursuant to his agreement that he would pay all. No judgment or judgments existed against the firm at the time of this sale and transfer. On the 4th day of September, 1914, the voluntary petition in bankruptcy of Suprenant was filed and adjudication made. A receiver was appointed on the 8th day of September, 1914. On the 25th day of September, 1914, the trustee herein duly qualified. First the receiver and then the trustee succeeding went into the possession of all the property in Suprenant's possession, including that in question. About April 30, 1914, certain firm creditors sued on their claim, and at some later time, not stated, obtained judgments against Moody and Suprenant on debts owing by the firm at the time of such sale, and September 2, 1914, executions were issued and a levy made by the sheriff, it is claimed, on the property of Moody and Suprenant. No petition in bankruptcy has been filed against the firm or copartnership, or Moody. Other judgments have been obtained against the partners of the firm on firm debts.

It is claimed by these judgment and execution creditors of the former firm or copartnership of Moody & Suprenant that, notwithstanding the said sale of Moody to Suprenant, the property which the copartnership owned at the time of such sale remains the property of the firm, and is subject to levy and sale on execution against the members of that firm notwithstanding the bankruptcy of Suprenant and the appointment of a receiver and trustee in the bankrupcy proceedings against him, and that such property does not pass to the trustee of Suprenant. Whether or not, after a sale of the property and its conversion into money in the pending bankruptcy proceedings, the firm creditors will, in equity, be entitled to the proceeds of the property found and identified as firm property at the time of the sale to Suprenant in satisfaction, so far as it will go, of their claims, is not now up or before the court. The question is, notwithstanding any equity or equitable claim or lien (if any) which these firm creditors have, shall the property remain in custodia legis, where it now is—that is, in the possession of the court in bankruptcy for purposes of administration and distribution—or may these judgment and execution creditors of the firm of Moody & Suprenant hold it on execution and sell same as property owned by the firm and not by Suprenant? This, of course, involves the question whether or not the title of the property passed to Suprenant on the sale by Moody to him. If the title did pass to Suprenant it passed to the trustee, even if subject to

some equity which may be enforced, and is lawfully in custodia legis, and this court may enjoin any levy on and sale thereof, and it may be sold by the trustee. The judgments created no lien until execution issued and levy made, and all judgments were docketed within four months of the bankruptcy of Suprenant.

In the state of New York and many other jurisdictions it seems to be the well-settled law, in the absence of fraud making the sale or transfer voidable, one of two partners may sell or relinquish to the other all his interest in the partnership property, such other agreeing to pay the firm debts, and that in such case the purchasing partner acquires the same ownership and dominion of the property as if it had ever been his own separate property, and that, the sale being made in good faith, the title vests in the purchasing partner as his own private estate, free from any lien or equity in favor of partnership creditors. This assumes, of course, that the law had not at the time of such transfer taken the partnership property into its custody for purposes of administration and distribution. This is true even if the purchasing partner turns out to be insolvent at the time of buying out the other partner, and this seems to be the rule as well laid down by the Supreme Court of the United States. Partnership creditors have no lien on partnership assets growing out of the partnership, at least until the property passes into custodia legis and is being administered and a lien is declared. Prior to that time partnership creditors may have an equity to have the partnership property applied to the payment of partnership debts, but this equity of the creditors of the partnership is a derivative one. It is not held or enforceable in their own right. It is derived from the right of the partners to have the partnership property applied to the payment of the partnership debts in preference to those of any individual partner. So long as the partnership exists and the partners are in a situation to enforce this right, the creditors may appeal to the courts, or either partner may, but when there are two partners and the one has sold out to the other, the purchasing partner taking the property as his own individual property, the creditors are in no situation or condition to enforce the right or equity referred to.

The leading case in New York on this subject is Dimon, Receiver, etc., v. Hazard, 32 N. Y. 65, where it is held:

"Where one of two partners retires from business, relinquishing to the other all his interest in the partnership property, the remaining partner acquires the same dominion as if it had ever been his own separate property. The assignment being made in good faith, the title vests in the assignee as his own private estate, free from any lien or equity in favor of partnership creditors. Such assignee may lawfully transfer such property in payment of his individual debts."

This case is cited, approved, and followed in Stanton, as Receiver, etc., v. Westover et al., 101 N. Y. 265, 267, 4 N. E. 529, where it was held one of two partners, on retiring from the business, transferred to his copartner his interest in the firm property, each agreeing to pay one-half of its debts. The firm was solvent, but the remaining partner was in fact insolvent at the time. This, however, was not known to him or the retiring partner, and the transfer was made in good faith. In an

action wherein creditors of the firm claimed a preference over the individual creditors of the remaining partner, held that by the transfer the title vested in the remaining partner as his own private estate; that he acquired the same dominion over it as if it had always been his own separate property, free from any lien or equity on the part of partnership creditors, and that transfers by him of the property in payment of individual debts were lawful. And as to this case, see 10 N. Y. Annotated Digest, p. 814.

This is stated to be the law in Parsons on Partnership (4th Ed.) note 1 to section 248, on pages 330, 331. It is there said:

"Where one partner transfers the assets to his copartner a question arises of a different sort. There is in that case an intention to pass the property from the firm to the purchasing partner. Both parties acting together have power to convey firm property of any kind;' and here therefore the legal title passes. The firm creditors have no more right to complain than the creditors of any debtor who has conveyed away his property; they can complain, that is, only when the conveyance is a fraud upon creditors. In the ordinary case, therefore, the firm creditors have no right to complain, and no claim upon the property transferred. Schleicher v. Walker, 28 Fla. 680, 10 South. 33; Stanton v. Westover, 101 N. Y. 265, 4 N. E. 529. And the same thing is true if the transfer is not to one of the partners, but to an individual creditor of a partner, or to a third party, provided all the partners assent."

Dimon v. Hazard, supra, is cited and followed also in Crane v. Roosa, 40 Hun, 458; Cory v. Long, 32 N. Y. Super. Ct. 497; Durfee v. Bump, 3 N. Y. Supp. 507,[1] and is applied in Crook v. Rindskopf, 105 N. Y. 482, 484, 488, 12 N. E. 174. See, also, 30 Cyc. 545, etc.

In Saunders v. Reilly, 105 N. Y. 12, 12 N. E. 170, 59 Am. Rep. 472, the court held:

"A mere general creditor of a firm, having no execution or attachment, has no lien whatever upon its personal assets. While firm creditors are entitled to a preference over creditors of the individual members of the firm in the payment of their debts out of the assets of the firm in course of liquidation, their equity is not held or enforceable in their own right, but is a derivative one, practically a subrogation to the equity of each individual partner to have the firm assets applied primarily to the payment of its debts; and, where no such equity exists in favor of any member of the firm, the firm creditors have none. Where, therefore, judgment is recovered against all the members of a firm upon a joint obligation, not an indebtedness of the firm, the firm property may be levied upon and sold on execution issued on the judgment; and after such sale no rights, legal or equitable, in such property are left to the firm creditors, but the purchaser acquires full title although the firm be insolvent."

In the course of its opinion in this last-cited case (105 N. Y., at page 18, 12 N. E. at page 172), the court said:

"But one of two partners may transfer all of his interest in the partnership property to his copartner, and the purchasing partner will be vested with the absolute title to the corpus of all of the partnership property, as if it had always belonged to him. Stanton v. Westover, 101 N. Y. 265 [4 N. E. 529]. And all the members of a firm may sell the partnership property, even if wholly insolvent, to a purchaser in good faith, and thus convey, free from the claim of firm creditors, a good title to the firm property. Instead of selling for cash they may transfer firm property to pay a firm debt. And they may transfer the firm property to pay a joint debt for which they are

[1] Reported in full in the New York Supplement; **reported as a memorandum decision without opinion in 51 Hun, 637.**

jointly liable outside of the business of the firm, and the joint creditor will obtain a good title to the firm property. Therefore, while firm property will not pass under successive sales upon executions issued against the individual partners, we can see no reason to doubt that such property will pass under a sale upon a joint execution against all the partners, issued upon a judgment recovered for any joint debt whatever."

In Case v. Beauregard, 99 U. S. 119, 25 L. Ed. 370, the court held:

"A member of a firm assigned and transferred in good faith his interest in the partnership property in payment of a just debt for which he was solely liable. The creditor took possession of it and sold it to A., who, by an act of sale, in which the other member of the firm united, transferred it for a valuable consideration to B. The firm and the members of it were insolvent. C., claiming to be a simple-contract creditor of the firm, then filed his bill to subject the property to the payment of his debt. Held, that C. had no specific lien on the property, and, there being no trust which a court of equity can enforce, the bill cannot be sustained."

In the course of its opinion the court said:

"No doubt the effects of a partnership belong to it so long as it continues in existence, and not to the individuals who compose it. The right of each partner extends only to a share of what may remain after payment of the debts of the firm and the settlement of its accounts. Growing out of this right, or rather included in it, is the right to have the partnership property applied to the payment of the partnership debts in preference to those of any individual partner. This is an equity the partners have as between themselves, and in certain circumstances it inures to the benefit of the creditors of the firm. The latter are said to have a privilege or preference, sometimes loosely denominated a lien, to have the debts due to them paid out of the assets of a firm in course of liquidation, to the exclusion of the creditors of its several members. Their equity, however, is a derivative one. It is not held or enforceable in their own right. It is practically a subrogation to the equity of the individual partner, to be made effective only through him. Hence, if he is not in a condition to enforce it, the creditors of the firm cannot be. Rice v. Barnard et al., 20 Vt. 479 [50 Am. Dec. 54]; Appeal of the York County Bank, 32 Pa. 446. But so long as the equity of the partner remains in him, so long as he retains an interest in the firm assets, as a partner, a court of equity will allow the creditors of the firm to avail themselves of his equity, and enforce, through it, the application of those assets primarily to payment of the debts due them, whenever the property comes under its administration.

"It is indispensable, however, to such relief, when the creditors are, as in the present case, simple-contract creditors, that the partnership property should be within the control of the court, and in the course of administration, brought there by the bankruptcy of the firm, or by an assignment, or by the creation of a trust in some mode. This is because neither the partners nor the joint creditors have any specific lien, nor is there any trust than can be enforced until the property has passed in custodia legis. Other property can be followed only after a judgment at law has been obtained and an execution has proved fruitless."

In Fitzpatrick v. Flannagan, 106 U. S. 648, at page 654, 1 Sup. Ct. 369, at page 374 (27 L. Ed. 211), the court said:

"The legal right of a partnership creditor to subject the partnership property to the payment of his debt consists simply in the right to reduce his claim to judgment, and to sell the goods of his debtors on execution. His right to appropriate the partnership property specifically to the payment of his debt, in equity, in preference to creditors of an individual partner, is derived through the other partner, whose original right it is to have the partnership assets applied to the payment of partnership obligations. And this equity of the creditor subsists as long as that of the partner, through which it is derived, remains; that is, so long as the partner himself, in the language of

this court in Case v. Beauregard, 99 U. S. 119, 125 [25 L. Ed. 370], 'retains an interest in the firm assets, as a partner, a court of equity will allow the creditors of the firm to avail themselves of his equity, and enforce, through it, the application of those assets primarily to payment of the debts due them, whenever the property comes under its administration.'

"It follows from this view that, even though the partnership of Rummel & Son was not dissolved, Rummel had the right, with the consent of Cutler, to appropriate the property to the payment of his individual debt to Huiskamp Bros., because the plaintiff, at the time the mortgage was made by Rummel to Huiskamp Bros., had no specific lien upon the property, and there was no trust impressed upon it at that time which could be enforced by the plaintiff. It was only necessary that the disposition of the property should have been bona fide on the part of both parties, and without any intent to hinder or delay the plaintiff. Howe v. Lawrence, 9 Cush. (Mass.) 553 [57 Am. Dec. 68], and cases there cited; Locke v. Lewis, 124 Mass. 1 [26 Am. Rep. 631]."

This is quoted and approved in Huiskamp v. Moline Wagon Co., 121 U. S. 310, 323, 324, 7 Sup. Ct. 899, 905 (30 L. Ed. 971), in which case the court held:

"One partner may, with the consent of his copartner, apply the partnership property to the payment of his individual debt, as against a creditor of the partnership, who has acquired no lien on the property.

"Where such payment is claimed to be lawful on the ground that the property so applied has become the individual property of the partner making the payment, no creditor of the partnership acquires any right in respect of the property by the fact that he does not know of the transfer of the property to such partner, so long as he has no lien on the property, and it is applied in good faith by such partner to pay his individual debt."

[1-4] Scores of other cases might be cited, but this is sufficient to show that when one of two partners sells out his entire interest in the property of the firm to the remaining or other partner, such purchasing partner takes the absolute title as though the property had always been his, and subject to *no lien* in favor of partnership creditors. Partnership creditors may have some equities as against the individual creditors, but to what extent, if any, it is not necessary or proper now to decide. A reference has been ordered to get at all the facts. The title to this property passed to Suprenant over four months prior to his bankruptcy. By such sale by the one partner to the other only partner the partnership was dissolved. Parsons on Partnership (4th Ed.) § 391. The liability of both Moody and Suprenant to the firm creditors remained, however, except it may be as to some who for a consideration or in some way released Moody. All this property in question consequently came into the possession and custody of this court as a part of the individual estate of Suprenant, charged, it may be (no decision on that question is made), with equities in favor of the firm creditors. But if so, the firm creditors cannot interfere with such property, or levy upon or sell it or enforce any levy made within the four months preceding the bankruptcy of Suprenant. They cannot enforce any equitable right they may have in any such way, as their judgments were obtained within four months of bankruptcy, or since, and the property is in custodia legis, and rightfully so, subject to any equitable rights firm creditors may have and which this court has full power as a court of equity to enforce and protect.

The same doctrine as to the law above stated is reiterated by the Circuit Court of Appeals, Eighth Circuit, Sargent v. Blake, 160 Fed. 57,

87 C. C. A. 213, 20 Am. Bankr. Rep. 115, 17 L. R. A. (N. S.) 1040, 15 Ann. Cas. 58. The court there held:

"Until partnership property is placed in the custody of the law by some suit or act which invokes the interposition of a court to administer it, partners, with the consent of each, have the right and the power to convert it into individual property, to apply it to the payment of individual debts in preference to the debts of the partnership, or to make any other disposition of it in good faith which does not constitute a voidable preference. Insolvency does not destroy or diminish this right of disposition. The right of the creditors of a partnership to be paid out of the partnership property in preference to the individual creditors does not attach until an application is made to some court for the administration of the partnership property, nor then unless some partner has at that time that right, for the preferential equity of the partners is the mere right to enforce the right of the partners to compel such a preference. Before the partnership property is placed in custodia legis it is not held in trust for the *partnership creditors*, and they have no lien upon it.

"When all the partners consent, their application of the partnership property to the payment of an individual debt of a partner within four months of the filing of a petition in bankruptcy, and while the partners and the partnership are insolvent, does not evidence any intent to hinder, delay, or defraud the creditors of the partnership within the meaning of section 67e of the Bankruptcy Act of 1898, and it is not void or voidable where the creditor paid has no reasonable cause to believe that a preference was intended thereby. The covenant of an insolvent partner to assume and pay the debts of an insolvent partnership is a valuable consideration sufficient to support a conveyance of an interest in the partnership property.

"The assumption of payment of partnership debts by one partner in consideration of an absolute conveyance of the partnership property to him by the other creates no trust in and fastens no lien upon the property thus conveyed in favor of the partnership creditors prior to any request for the interposition of a court to administer the partnership property."

In Re Kolber (D. C.) 193 Fed. 281, the court held:

"In the absence of fraud, and a showing as to insolvency of a firm when it was dissolved, the assets validly vested in the succeeding member as an individual, entitling him to an allowance of an exemption in bankruptcy proceedings brought against him 14 days later."

In that case one Myers and one Kolber were sole copartners. Fourteen days before the petition in bankruptcy was filed against Kolber all the assets of the firm were transferred in good faith to Kolber, who assumed payment of all the partnership liabilities. Kolber continued the business for only 14 days, but it was held that the title to the assets so sold to him was vested in him, and that he was entitled to his exemption thereout as against firm creditors.

In Re Telfer, 184 Fed. 224, 106 C. C. A. 366, it was held (C. C. A., Sixth Circuit) that the bankruptcy act does not "work a change of the established rule fixing the substantive rights of creditors, respectively, of the partnership and of its individual members."

In re Filmar, 177 Fed. 170, 100 C. C. A. 632, does not affect the real question here involved, as it does not concern the title of Filmar to the property, but bears on the equities of the firm creditors when such property falls into the court of bankruptcy and is being administered, a question expressly reserved in the case before the court.

Whatever the equities of these firm creditors may be (if any) to have the proceeds of the property that came to Suprenant by his purchase

from Moody applied first to the payment of their claims and judgments, those must be settled and adjusted by the court having possession of the property with power to reduce it to money and distribute. The title was in Suprenant at the time the judgments were obtained and execution issued and levied, and at the time the petition in bankruptcy was filed and, on adjudication, passed to the trustee. It was not subject to any valid levy and sale on execution which could stand against the bankruptcy proceedings. Bankruptcy Act, § 67f; † Collier on Bankruptcy (10th Ed.) p. 964. The result is that the temporary injunction granted with the order to show cause must be made permanent, and the property will be sold in due course by the trustee who, so far as he can, will keep account of the proceeds of the sale of property which came from the partnership assets, to the end that no rights may be lost or prejudiced. The sheriff and all partnership creditors will be enjoined from interfering with, levying upon, or selling any of the property of Suprenant, including that which he obtained from the firm and which were formerly firm assets.

There will be an order accordingly.

