# FARMERS' & MECHANICS' NATIONAL BANK OF PHILADELPHIA *v.* RIDGE AVENUE BANK.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 291.   Argued March 15, 1916.—Decided April 3, 1916.

Under subsection f of § 5 of the Bankruptcy Act of 1898, and after reviewing conflicting authorities in regard to its construction, *held* that when a partnership as such is insolvent and when each individual member is also insolvent, and when the only fund for distribution is produced by the individual estate of one member, the individual creditors of that member are entitled to priority in the distribution of the fund.

THE facts, which involve the construction of the provisions of § 5 of the Bankruptcy Act of 1898, relative to the individual assets of a member of. a bankrupt partnership and who are entitled to priority in sharing therein, are stated in the opinion.

*Mr. J. Frank Staley* for Farmers' & Mechanics' National Bank:

Distribution must be made in strict compliance with clause "f," that is, the creditors of the individual partners are entitled to priority in the distribution of such partner's individual estate. The existence or non-existence of firm assets does not permit or admit of exception to this positive rule. This court has so ruled when it practically refused to review the decisions of the appellate courts in the Second and Fourth Circuits, in the cases of *Mac-Nabb v. Bank of LeRoy,* 133 Fed. Rep. 912; *S. C.,* 198 U. S. 583; and *Euclid National Bank v. Union Trust Co.,* 149 Fed. Rep. 975; *S. C.,* 205 U. S. 547.

Further this court has recognized the rule of distribu-

tion as above stated to be the established rule and has denied that any exception to the general rule, known as the English exception, exists. *Murrill* v. *Neill,* 8 How. 414.

The decided weight of authority requires distribution to be so made, in strict compliance with clause "f"; the non-existence of firm assets for distribution does not create an exception to the general rule. Three Circuit Courts of Appeals and four District Courts of other circuits have so ruled. The only decisions to the contrary under the act of 1898, are *Conrader* v. *Cohen,* 121 Fed. Rep. 801, and *In re Green,* 116 Fed. Rep. 118 (D. C., Iowa), but the facts in each of these cases were unusual and the decisions based upon such unusual facts.

*Mr. Frank R. Savidge* for Ridge Avenue Bank:

The equitable principle, commonly called an exception to the general rule, that firm creditors share equally with separate creditors of the partners in individual assets, where there are no firm assets and no living solvent partner, is supported by the best authority.

Lindley on Partnership (8th ed.), p. 811, note, 855; Gilmore on Partnership, p. 438–9; Parsons on Partnership (2d ed.), p. 500; Collyer on Partnership (6th ed.), p. 1459; Storey on Partnership (7th ed.), § 380; see also Loveland on Bankruptcy (1912), § 283; Bispham's Equity (9th ed.), § 517.

*In re Janes,* 133 Fed. Rep. 912; *Euclid Nat. Bank* v. *Union Trust Co.,* 149 Fed. Rep. 975; *Mills* v. *Fisher & Co.,* 159 Fed. Rep. 897, and other cases cited by appellant lose sight of the intent and purpose of the act, and have adopted the narrow view that as the act contains no express provision as to the manner of distribution to be followed in the absence of firm property, the application of the principle, more than a century old, of permitting firm creditors in such event to participate equally with separate creditors in separate assets would be judicial

OCTOBER TERM, 1915.

legislation, but in this respect the English courts universally apply the exception, where there is no firm estate and no solvent living partner. Lindley on Partnership (8th ed.), p. 855; *Re Carpenter,* 7 Morrell Bankr. Cas. 270; *Ex parte Taitt,* 16 Vesey, Jr., 193. And see also *In re Collier,* Fed. Cases, No. 3002; *Conrader* v. *Cohen,* 121 Fed. Rep. 801.

The term now used in the acts, means the fund remaining after payment of expenses of administering the estate in bankruptcy; in other words, assets distributable to creditors. *In re Litchfield,* 5 Fed. Rep. 47; *In re McEwen,* Fed. Cas. No. 8783; see also Gilmore on Partnership, p. 440.

Firm creditors under the act of 1867 were allowed to participate in separate assets where there was no partnership fund for distribution, and this, regardless of whether the partnership was bankrupt or not. This method of distribution tended to produce the equality which it was the manifest purpose of the act to secure. *In re Jewett,* Fed. Cas. No. 7304; *In re Knight,* Fed. Cas. No. 7880; *In re Downing,* Fed. Cas. No. 4044; *In re Rice,* Fed. Cas. No. 11750; *In re McEwen,* Fed. Cas. No. 8783; *In re Collier,* Fed. Cas. No. 3002; *In re Green,* 116 Fed. Rep. 118.

No decision of the Supreme Court, either in equity or in bankruptcy, has been found, deciding the question as here raised, based on facts identical with or similar to those in this case.

Since the opinion of Justice Daniel in the court below was rendered, the majority of the Federal court, under the Bankruptcy Act of 1867, and those which it is submitted have given the act of 1898 the proper equitable construction, have supported the exception, and it is significant that the majority of the States of the Union sustain the exception in distributing insolvent partnership and individual estates in equity. Among the States allowing it are Alabama (*Smith* v. *Mallory,* 24 Alabama,

628); New Jersey (*Davis* v. *Howell,* 33 N. J. Eq. 72); Missouri (*Level* v. *Ferris,* 24 Mo. App. 445; *Hundley* v. *Ferris,* 103 Missouri, 78); Rhode Island (*Cowell* v. *Bank,* 16 R. I. 288); Wisconsin (*Thayer* v. *Humphrey,* 91 Wisconsin, 276); Maine (*Harris* v. *Peabody,* 73 Maine, 262); Ohio (*Rogers* v. *Meranda,* 7 Oh. St. 179).

The so-called exception is sustained by reason and equity. Gilmore on Partnership, p. 439; *In re Knight,* Fed. Cas. No. 7880.

The extreme injustice which the strict application of the rule, without the exception, may cause, is well stated by the court. *In re Green,* 116 Fed. Rep. 118.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The essential facts stated in the certificate of the court below are these: The firm of William Gray & Sons and its three partners, William J. Gray, Peter Gray and Alexander J. Gray, were adjudged bankrupts. The same person was appointed trustee of the four estates. It resulted from charging separately against each estate the mere necessary and unquestioned expenses of administration that there was nothing whatever in the estate either of the partnership, of that of William J. Gray or of Peter Gray,—indeed in the latter there was nothing to defray the expenses of administration. As to the estate of Alexander J. Gray, after charging the expenses of administration there remained $1,597.26. Creditors of the firm proved their debts against it, the Ridge Avenue Bank of Philadelphia being among the number, while only one creditor, the Farmers' & Mechanics' National Bank of Philadelphia, proved a debt against the individual estate of Alexander J. Gray, that debt exceeding the total sum of the estate. No creditor proved against the individual estate of William J. Gray or that of Peter

Gray. Under these conditions the dispute which arose was whether the estate of Alexander J. Gray was to go wholly to the Farmers' & Mechanics' National Bank, the individual creditor, or was to be proportionately applied to the individual and firm creditors because of the absence of any firm estate for distribution. The District Court directed the fund to be distributed between the Farmers' & Mechanics' National Bank, the creditor of the individual estate, and the creditors of the firm, and the question of law which the court below propounds to enable it to review this action of the District Court, is as follows:

"When a partnership as such is insolvent and when each individual member is also insolvent, and when the only fund for distribution is produced by the individual estate of one member, are the individual creditors of such member entitled to priority in the distribution of the fund?"

The solution of this question primarily depends upon an interpretation of subsection f of § 5 of the Bankruptcy Act of 1898, and secondarily upon a consideration of all the pertinent subsections of the section, indeed, of all the relevant provisions of the context of the act. Subsection f is as follows:

"f. The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts. Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be added to the assets of the individual partners in the proportion of their respective interests in the partnership."

Let us first sift the respective contentions so as to reach the ultimate proposition required to be decided. In the first place, in favor of the right of the creditor of the individual partner to be paid, under the facts stated, out of the individual estate to the entire exclusion if necessary of the creditors of the partnership estate, it is urged that such result is so unambiguously commanded by the rule of distribution established by the text of subsection f that there is no room for construction but the simple duty arises to enforce the text, as to do otherwise would amount to judicial legislation. It is undoubted that this proposition is supported by largely the greater weight of opinion of the courts of the United States in enforcing subsection f. *In re Wilcox,* 94 Fed. Rep. 84 (1899); *In re Mills,* 95 Fed. Rep. 269 (1899); *In re Daniels,* 110 Fed. Rep. 745 (1901); *In re Janes,* 133 Fed. Rep. 912, 67 C. C. A. 216 (1904), reversing 128 Fed. Rep. 527; *In re Henderson,* 142 Fed. Rep. 588 (1906); *Euclid National Bank* v. *Union Trust Co.,* 149 Fed. Rep. 975, 79 C. C. A. 485 (1906), affirming *In re Henderson, supra; Mills* v. *Fisher,* 159 Fed. Rep. 897, 87 C. C. A. 77 (1908); *In re Hull,* 224 Fed. Rep. 796 (1915).

On the other hand, to refute the proposition and to avoid the effect of the authorities sustaining it just referred to three contentions are relied upon. (a) It is said the absence of ambiguity in the general rule as stated in subsection f is conceded and the soundness of the authorities cited recognizing that fact is not disputed, but these concessions, it is declared, are negligible, since the fact that there were no partnership assets and no solvent partner causes this case to be an exception to the rule expressed in subsection f and hence not governed by it and therefore makes it clear that the authorities cited are inapposite because they mistakenly applied the general rule to an exceptional case which that rule did not govern. (b) That this is demonstrated first by the fact that the general rule

was as unambiguously expressed in the previous bankruptcy acts (§ 14 of the act of 1841 and § 36 of the act of 1867) and yet under those acts the exception stated, which unquestionably governed in bankruptcy in England where the general rule was the same, was also held to be controlling by judicial decisions in this country. This being true, the argument insists the inference is that Congress in adopting the act of 1898 without any expression excluding the continued operation of the exception which prevailed under the previous acts, must be considered as having impliedly recognized the continued force of that exception, that is, must be held to have substantially made that exception a part of the rule established under the act of 1898. And this view it is insisted is expressly sustained by the following decided cases under the act of 1898: *In ré Green,* 116 Fed. Rep. 118 (1902); *In re Conrader,* 118 Fed. Rep. 676 (1902); *Conrader v. Cohen,* 121 Fed. Rep. 801, 58 C. C. A. 249 (1903), affirming *In re Conrader; supra; In re Janes,* 128 Fed. Rep. 527 (1904), reversed in 133 Fed. Rep. 912, 67 C. C. A. 216; and by the present case, *In re Gray,* 208 Fed. Rep. 959 (1913), and is in reason supported by the adjudged cases which upheld the asserted exception under the prior acts.

(c) That even if this be held to be not the case, as there is nothing in the act of 1898 repudiating the application and existence of the exception which prevailed under the previous acts, therefore as a question of original investigation that exception should be held to be equally applicable and controlling under the act now in force as it was under the previous bankruptcy acts, since the general rule was as clearly stated in those acts as it is in this.

A twofold reply is made to these contentions: First, although admitting that the alleged exception prevailed in England, it is denied that it was authoritatively recognized in this country under the previous acts, and second, by insisting that even if it was, it is not applicable under

the act of 1898 because the terms of that act make manifest that it was drawn for the purpose of preventing the method of distribution provided in subsection f from being subject to the exception relied upon.

As we are of opinion that it is to be conceded that if under the prior acts it was settled authoritatively and conclusively that the exception relied upon obtained and was fully recognized in practice, it would follow that the enactment of the same general rule without anything indicating a departure from the exception would justify the conclusion that it was the legislative intent to continue the exception, it results that in order to answer the question propounded the whole case comes to two inquiries: Was there such an authoritative exception to the general rule under the prior laws, and if not was the continued existence of such exception compatible with the rule of distribution established by subsection f of the present act as considered in the light of the context of § 5 of which it forms a part and of the scope and operation of the act of 1898?

1. Undoubtedly in England with the development of the general rule for the distribution of partnership and individual estates in bankruptcy as now formulated in subsection f of the present Bankruptcy Act, there also was evolved in practice the so-called exception here relied upon which was applicable in cases where there was no partnership estate to distribute and no solvent partner. We content ourselves with this statement and do not refer to the adjudged cases in England establishing the rule and those from which the alleged exception came to be evolved since they were quite fully referred to in *Murrill* v. *Neill*, 8 How. 413, and will all be found stated in the fullest degree in the opinion of Lowell, Judge, in *In re Wilcox*, 94 Fed. Rep. 84. It is also true that this asserted exception came to be recognized and applied in adjudged cases in this country under the prior bankruptcy acts.

The cases on this subject again are not referred to because they will also be found stated in the opinion in the *Wilcox Case*. But while this is true, we think there is no ground for saying that the asserted exception had become so authoritatively. established prior to the adoption of the present law as to cause it to be in effect a part of the rule, since on the contrary, as will be seen by the references already made, its applicability was constantly disputed and its enforcement challenged. Nothing more is required to demonstrate this statement than a recurrence to *Murrill* v. *Neill, supra,* since in the opinion in that case after considering the general rule of distribution as now stated in subsection f and the alleged exception here under review, it was said: "It may be proper in this place to mention the two departures permitted by the Court of Chancery in England from the general rule pursued by that court, which departures were adverted to in a previous part of this opinion." After then stating the first exception, the one now in question was referred to as follows: "The second is that in which there are no joint effects at all. In this last instance it is said that the joint creditors may come in for dividends *pari passu* on the separate effects; though if there be joint effects, though of the smallest possible amount, this privilege would not be allowed. These exceptions it seems difficult to reconcile with the reason or equity on which the general rule is founded; they are but exceptions, however, and cannot impair that rule. They do not, for aught we have seen, appear to have been recognized by the courts of this country." p. 427.

2. Although the alleged exception was therefore clearly not so authoritatively established as to cause it to become a part of the rule by the enactment of the Bankruptcy Act of 1898, it yet remains to consider whether its existence is compatible with that act, that is, whether to permit it would be in accord with the rights which the act gave and the duty which it imposed to enforce them. In the first

place it is to be observed that the act of 1898 in the open-ing subsections of § 5 confers the power on courts of bank-ruptcy to adjudge a partnership a bankrupt and to ad-minister the partnership estate so far as possible as any other estate, an authority not conferred by the previous Bankruptcy Acts. In the second place, subsection f establishing the rule of distribution is immediately fol-lowed by subsection g which provides as follows:

"The Court may permit the proof of the claim of the partnership estate against the individual estates, and *vice versa*, and may marshal the assets of the partnership estate and individual estates so as to prevent preferences and secure the equitable distribution of the property of the several estates."

The legislative mind must therefore have been imme-diately and directly concerned with the enforcement of the rule of distribution expressed in subsection f, since that subject was thus immediately considered and provided for. And the significance of this provision and its effect upon the continued existence of the supposed authority to depart from the rule expressly provided for by per-mitting the alleged exception now relied upon will become quite clear by the briefest possible outline of some of the principal considerations involved in the origin and develop-ment of that assumed exception.

As pointed out in the opinion in *Murrill* v. *Neill, supra,* and as fully shown by the review of the English cases so carefully stated in *In re Wilcox, supra,* to which we again refer, that origin and development was this: It came to pass in England at an ancient date that with the estab-lishment of the rule of distribution substantially as formu-lated in subsection f, it was recognized that a creditor of the joint or partnership estate would be permitted, if no objection was made, to prove his claim in a bank-ruptcy proceeding against an individual partner. This resulted from the fact that the power of the court over the

separate or individual estate extended not only to the individual assets, but to the share of the individual bankrupt in the partnership assets, the court having power upon application, by ordering separate accounts to be kept, to protect the rights of all and secure a distribution conformably to the settled rule. While there is obscurity and consequent contrariety of opinion as to the reason upon which it was placed, it no doubt came to pass in a further state of evolution that both joint and separate creditors were allowed to prove their claims in bankruptcy against the separate estate, the practice of protecting the rights of each by an order requiring separate accounts disappearing and the creditors being relegated for the accomplishment of that result to a bill in equity to enforce and secure the distribution as provided in the rule. It is further certain that as in every case where an order was made allowing the joint creditor to prove against the separate estate of a partner such right would be frustrated by chancery proceedings, it came to pass that joint creditors were only allowed to prove against the separate estate upon condition that distribution would be made conformably with the general rule in every case where that course could be compelled by chancery proceedings. As it came further however to be appreciated that chancery could not afford relief in a case where there was no joint estate and no solvent partner, it resulted that in such a case the limitation as to distribution was treated as not applicable and therefore the alleged exception to the general rule arose,—an exception which, as pointed out by this court in *Murrill* v. *Neill, supra,* was but a failure to give effect to the rule, not because of the absence of right of the creditors to enjoy its benefit, but alone because the judicial power had at its command no remedy which it could apply to give effect to the legal right which undoubtedly existed.

When the origin and source of the so-called exception is thus appreciated and the comprehensive delegation of

authority for the first time conferred by subsection g is considered, it would seem to be fairly inferable that at the very moment of the reëxpression of the ancient rule in subsection f in terms free from ambiguity the means of preventing its frustration in the guise of an exception or otherwise because of an assumed absence of judicial remedy to enforce the rule was provided for. And this being true, it of course results that no possible reason can be found for refusing to give effect to the law by permitting the successful operation of the so-called exception now relied upon. In fact, irrespective of the considerations derived from the origin of such assumed exception to which we have referred, when the positive commands of the statute are considered and the new power conferred by the act as to partnership estates is borne in mind, we see no escape from the conclusion that the powers conferred by subsection g are coincident with the duties which the act imposes and amply efficient to secure and give effect to their performance. This, indeed, was the view hitherto indicated in *Miller* v. *New Orleans Fertilizer Co.*, 211 U. S. 496, where after quoting subsection f of the act it was said:

"To enforce these provisions the act compels (subdiv. d) the keeping of separate accounts of the partnership property and of the property belonging to the individual partners; the payment (subdiv. e) of the bankrupt expenses as to the partnership and as to the individual property proportionately; and permits (subdiv. g) the proof of the claim of the partnership estate against the individual estate, and *vice versa*, and directs the marshaling of the assets of the partnership estate and the individual estates 'so as to prevent preferences and secure the equitable distribution of the property of the several estates.'" p. 504.

It follows that the question propounded will be answered, Yes.

*And it is so ordered.*