## TITUS v. MAXWELL.

### In re HAMDEN.

(Circuit Court of Appeals, Sixth Circuit. July 14, 1922.)

No. 3661.

1. **Appeal and error ⬦⟹907(5)—Assumed that summary of evidence referred to by judge contained no more than referee's findings.**

Where order of District Judge recited his consideration of a summary of the evidence, but no summary was sent to appellate court, except so far as contained in referee's findings of fact and conclusions of law, and neither party referred to it or asked to have it sent up, it will be assumed that, if there was a separate summary, it contained substantially no more than as shown by referee's findings.

2. **Bankruptcy ⬦⟹354—Rule in equity as to distribution as between partnership and individual creditors applies in bankruptcy.**

It is a general equity rule that, in the administration and distribution of the assets of a partnership and its members, partnership debts should in the first place be paid out of partnership assets, and individual debts out of individual assets, and that partnership creditors cannot resort to individual assets, nor individual creditors to partnership assets, except in case of surplus, and this rule is applied to distribution in bankruptcy by Bankruptcy Act, § 5f (Comp. St. § 9589).

3. **Bankruptcy ⬦⟹354—Individual creditors entitled to priority, when fund for distribution produced by estate of partner.**

When a partnership, as such, is insolvent, and the only fund for distribution is produced by the estate of one member, individual creditors of that member are entitled to priority.

4. **Bankruptcy ⬦⟹354—Preference of partnership creditors ceases when property becomes property of partner or third person.**

The right of partnership creditors to appropriate partnership property to payment of their debts is not derived through specific lien, but by a sort of subrogation through the partner whose original right it was to have the assets so applied, and subsists only so long as the equity of the partner remains, and ceases when the partnership property by bona fide transfer has become the several property of one partner or third person.

5. **Bankruptcy ⬦⟹69—Partnership may be bankrupt and partner not, or partner bankrupt and partnership not.**

Under Bankruptcy Act, § 5h (Comp. St. § 9589), the partnership may be in bankruptcy and the partner not, or a partner may be in bankruptcy and the partnership not.

6. **Bankruptcy ⬦⟹54—Partnership not insolvent, so long as any member has sufficient property to satisfy debts.**

A partnership is not insolvent so long as any of its members has property enough to accomplish satisfaction of the debts of that member, together with the partnership debts.

7. **Bankruptcy ⬦⟹354—Statute held not to change rule in equity for distribution of assets as between firm and individual creditors.**

Michigan Uniform Partnership Act of 1917, does not substantially conflict with the rule of equity prevailing in federal courts for the distribution of assets of a partnership as between firm and individual creditors.

8. **Bankruptcy ⬦⟹354—Act controls over state statute as to distribution of assets of partnership and its members.**

So far as Michigan Uniform Partnership Act of 1917 conflicts with express terms of Bankruptcy Act as to distribution of assets of partnership, the state statute must give way.

---

9. **Bankruptcy** ⟜354—Holder of chattel mortgage given on purchase of part-
ner's interest held entitled to priority over creditors of former firm.
    Where one partner purchased the other's interest, giving notes secured
    by recorded chattel mortgage on all assets of the business, and after con-
    ducting the business for five months was adjudicated a bankrupt, the
    holder of the mortgage was entitled to priority over the creditors of the
    former partnership.

Appeal from the District Court of the United States for the Western
District of Michigan; Clarence W. Sessions, Judge.

Petition by William Maxwell, trustee in bankruptcy of Thomas L.
Hamden, to discharge the proceeds of a sale of property from the lien
of a chattel mortgage in favor of Lincoln H. Titus. From an order ad-
verse to the mortgagee, he appeals. Reversed and remanded.

Lincoln H. Titus, of Kalamazoo, Mich. (Roscoe G. Goembel and
Albion B. Titus, both of Kalamazoo, Mich., on the brief), for appellant.
Robert L. Campbell, of Kalamazoo, Mich., for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Appeal from an order denying priority.
The bankrupt and one Johnston were partners in a retail meat business
at Kalamazoo, Mich., under the name of the "Liberty Cash & Carry
Market." On January 10, 1921, Johnston sold to the bankrupt the
former's interest in the partnership business for $700, and received
therefor from the bankrupt the latter's seven negotiable notes, of $100
each, secured by a chattel mortgage upon the entire assets of the former
partnership. This mortgage was duly recorded on the next day after
it was given. On February 18, 1921, Johnston sold and transferred
the notes and assigned the mortgage to appellant; the assignment being
on the same day duly recorded. The bankrupt conducted the business
in his own name from January 10, 1921, until June 10, 1921, when he
was adjudicated bankrupt on his voluntary petition. On July 29,
1921, the trustee in bankruptcy sold the assets of the bankrupt's estate
free and clear from all liens of every kind, under agreement between
the trustee, the referee, appellant, and another mortgagee that the liens
of the two mortgages (if any) should attach to the proceeds of the sale.
Thereafter the trustee filed petition to discharge the proceeds from the
lien of appellant's mortgage, upon the grounds that at the time the
chattel mortgage was given the partnership was insolvent; that the mort-
gage was given to cover up the assets of the bankrupt, and to hinder,
delay, and defraud creditors of the partnership; on information, that
"the money to pay said Johnston the amount of the mortgage was fur-
nished by said bankrupt, and was taken out of the business and his as-
sets for that purpose"; that appellant took no greater rights under the
mortgage than bankrupt had; and that appellant's mortgage claim
should be postponed until the payment in full of all partnership debts.[1]

Upon the question of insolvency the referee found that the bank-
rupt's testimony showed that the firm was "hard pressed" at the time

[1] A chattel mortgage prior to that of appellant and to the partnership
of Hamden and Johnston was assailed under the trustee's petition, but its
priority to claims of the partnership creditors is now conceded.

he purchased Johnston's interest; that about three months later bankrupt realized that he did not have sufficient property to pay his creditors in full, but that if the partnership was insolvent when the Johnston chattel mortgage was given bankrupt was not aware of it; that Johnston was sworn as a witness for the trustee, and testified in effect that when the mortgage was given he and the bankrupt did not know whether they owed $1,500 or $3,000; that one of the large creditors was notified of the transfer, but he recollected notifying no other. The referee further reported that, while there was grave doubt of the solvency of the firm, he was unable to say from the testimony produced that the firm was insolvent. He was, however, satisfied that, if the firm was insolvent, neither bankrupt nor Johnston "were aware of the fact or had knowledge of the same." The referee further reported that there was no testimony whatever that the chattel mortgage was not given in good faith, and found that appellant paid on February 17 or 18, 1921, a cash consideration of $525 for the assignment to him by Johnston of the chattel mortgage. The referee accordingly found that it could not be said, as matter of law, that the mortgage was given in bad faith, and found, as matter of law, that the same was not a fraud upon the firm's creditors, and that the firm at the time of the giving of the chattel mortgage from Hamden to Johnston was not insolvent. The referee further found that the copartnership had not been adjudged bankrupt, and that it was conceded at the time of the hearing that Johnston was not bankrupt. The referee accordingly concluded, as matter of law, that without determining whether appellant has greater rights as assignee of the notes and mortgage than Johnston would have had, he is entitled to priority under his mortgage over creditors of the former firm or the individual creditors of the bankrupt. Aside from appellant's mortgage and the prior mortgage, which, as before said, is now conceded priority over partnership creditors, none of the claims, partnership or individual, appear to have been secured.

[1] The District Court reversed the action of the referee and denied appellant's right to share in the assets until after the claims against the partnership were paid in full. This appeal is from that order of the District Court. The District Judge filed no opinion, and the reason for his conclusion does not appear. While the order of the District Judge recites his consideration, among other things, of the "summary of the evidence," no summary was sent to this court, except so far as contained in the referee's findings of fact and conclusions of law before referred to. Neither party refers to such summary, and neither asked to have it sent up under the appeal. We therefore think we should assume that the summary (if there was a separate summary) contained substantially no more than shown by the referee's findings; and it is said in appellant's brief, without dispute, so far as we have discovered, that "the proofs taken before the referee were not transcribed, and therefore were not returned to the District Court, and were not before the court at the time of hearing."

In his brief in this court, appellee does not assail the referee's conclusion that the firm was solvent at the time the mortgage in question was given, treating that question as unimportant, but plants his rights

upon the broad proposition that the partnership having been in debt (whether solvent or insolvent) when the chattel mortgage was given, its creditors must be paid in full before the partnership property or assets may be diverted into any other channel, as by the mortgage in question; that appellant, as assignee, took no better title than Johnston, the assignor; and that there was no consideration for Johnston's release to bankrupt of the former's interest in the partnership property. For the purposes of this review, and taking into account the referee's findings, it should be assumed that the partnership was solvent when the chattel mortgage was given; that the mortgage was taken and given in good faith on the part of both bankrupt and Johnston; and that appellant purchased the mortgage in good faith, and in fact while but one of the seven notes secured thereby was past due. It is apparent, from the bankrupt's schedules and the original proofs of claims, which have been sent up, that (aside from the two chattel mortgages) the much greater part of the debts were originally partnership obligations, the remainder having been contracted after Johnston's retirement; also that Hamden had made substantial payments upon some of the partnership debts, making further purchases from a number of the original partnership creditors, who practically are the same creditors named in the bankrupt's schedules, except one or two additional creditors. It is perhaps inferable that bankrupt had assumed payment of the partnership debts. His bankruptcy schedules are entitled:

"In the matter of T. Irven Hamden, Individually and as a Member of the Firm of Hamden & Johnston, Composed of T. Irven Hamden and Albert O. Johnston."

[2, 3] It is the general equity rule that, in the administration and distribution of the assets of a partnership and of its individual members, partnership debts should in the first place be paid out of partnership assets, and individual debts out of individual assets, and that partnership creditors cannot resort to individual assets, nor individual creditors to partnership assets, except in case of surplus of assets of the given class over the debts of that class; and subdivision "f" of section 5 of the Bankruptcy Act (Comp. St. § 9589) merely applies to distribution in bankruptcy, the rules theretofore existing in courts of equity. In re Telfer (C. C. A. 6) 184 Fed. 224, 106 C. C. A. 366; International Co. v. Cary (C. C. A. 6) 240 Fed. 101, 105, 153 C. C. A. 137. It is also now the settled rule that when a partnership, as such, is insolvent, and the only fund for distribution is produced by the estate of one member, the individual creditors of that member are entitled to priority in the distribution of the fund. Farmers' & Mechanics' Nat. Bank v. Ridge Ave. Bank, 240 U. S. 498, 36 Sup. Ct. 461, 60 L. Ed. 767, L. R. A. 1917A, 135. Appellant's debt was not a firm debt, but was the individual debt of the bankrupt. It therefore follows that appellant, as a secured creditor of Hamden, is entitled to priority in the administration below, as against both partnership and individual creditors, unless the assets in question, notwithstanding the bankrupt's individual purchase of one-half thereof from Johnston, and notwithstanding bankrupt's sole operation of the business for more than four months after the purchase, still remain solely partnership assets, subject to be ad-

ministered as such under the conditions prevailing here, and free from the lien of appellant's mortgage.[2]

[4] It was long since declared to be the rule in equity that the right of partnership creditors to appropriate the partnership property specifically to the payment of their debts is derived, not through specific lien, but by a sort of subrogation through the partner whose original right it was to have the partnership assets applied to the payment of partnership obligations; that this equity of the partnership creditors subsists so long, and so long only, as that of the partner through whom the equity is derived remains; that is to say, "so long as he retains an interest in the firm assets, as a partner, a court of equity will allow the creditors of the firm to avail themselves of his equity, and enforce, through it, the application of those assets primarily to payment of the debts due them, whenever the property comes under its administration"; but that "if, before the interposition of the court is asked, the property has ceased to belong to the partnership, and if by a bona fide transfer it has become the several property either of one partner or of a third person, the equities of the partners are extinguished, and consequently the derivative equities of the creditors are at an end. It is therefore * * * essential to any preferential right of the creditors that there shall be property owned by the partnership when the claim for preference is sought to be enforced." Case v. Beauregard, 99 U. S. 119, 124, 125, 25 L. Ed. 370; Fitzpatrick v. Flannagan, 106 U. S. 648, 654, 1 Sup. Ct. 369, 27 L. Ed. 211; Huiskamp v. Moline Wagon Co., 121 U. S. 310, 313, 7 Sup. Ct. 899, 30 L. Ed. 971; In re Green (D. C.) 116 Fed. 118 (opinion by Judge Shiras); In re Suprenant (D. C.) 217 Fed. 470, 475 (opinion by Judge Ray). See, also, Rapple v. Dutton (C. C. A. 9) 226 Fed. 430, at page 433, 141 C. C. A. 260, in which case it is said that the rule is otherwise when the partnership was insolvent at the time of the transfer by one partner to the other.

[5, 6] Subdivision (h) of section 5 of the Bankruptcy Act (Comp. St. § 9589) provides that:

"In the event of one or more, but not all, of the members of a partnership being adjudged bankrupt, the partnership property shall not be administered in bankruptcy, unless by consent of the partner or partners not adjudged bankrupt; but such partner or partners not adjudged bankrupt shall settle the partnership business as expeditiously as its nature will permit, and account for the interest of the partner or partners adjudged bankrupt."

---

[2] We may say, in passing, that we cannot assent to the proposition that the notes and mortgage in question were given without consideration, from the fact that Johnston's only right in the assets was in the surplus after debts were paid. Even were the tangible assets of the partnership insufficient to pay its debts in full, the good will of an established business, and the opportunity to operate that business alone, perhaps successfully, might well establish consideration for the payment of a substantial price, and presumably the bankrupt believed that conditions warranted the payment of $700 for such sole ownership and right of operation. It also seems clear that appellant's mortgage is not open to attack as a preference. A payment for value received at the time is not a preference. In re Perpall (C. C. A. 2) 271 Fed. 466. Nor is a preference assailable unless accepted with notice that a preference would result. Watson v. Adams (C. C. A. 6) 242 Fed. 441, 444, 155 C. C. A. 217. In any event, a preferential security could not be assailed as such after the lapse of four months, during all of which time creditors had constructive notice through the public records.

Here the partnership has not been adjudged bankrupt, nor has Johnston been so adjudged. The Bankruptcy Act does not change the rule that the partnership may be in bankruptcy and the partners not. Francis v. McNeal, 228 U. S. 695, 33 Sup. Ct. 701, 57 L. Ed. 1029, L. R. A. 1915E, 706. It is equally manifest that a partner may be in bankruptcy and the partnership not, and that a partnership is not insolvent so long as any of its members has property enough to accomplish satisfaction of the debts of that member together with the partnership debts. In all the bankruptcy cases in either the Supreme Court or the Circuit Courts of Appeals (brought to our attention) in which the marshaling of assets between partnership and individual creditors has been permitted, either the partnership has been adjudged bankrupt, as in the cases cited in the margin hereof,[3] or the selling partner has asked that preference be given firm creditors,[4] or there remained no surviving partner other than the purchaser of the rights of his copartner.[5] Johnston was not before the court, except as a witness for the trustee in bankruptcy.

[7] The trustee, however, invokes the Michigan Uniform Partnership Act of 1917 (Laws 1917, p. 119 et seq.), which provides:

By section 27, subd. 1, that "a conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership * * *"; by section 30, that "on dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed"; by section 40, subd. (h), "when partnership property and the individual properties of the partners are in the possession of a court for distribution, partnership creditors shall have priority on partnership property and separate creditors on individual property, saving the rights of lien or secured creditors as heretofore"; and by section 41, subd. 2, "when all but one partner retire and assign * * * their rights in partnership property to the remaining partner, who continues the business without liquidation of partnership affairs, * * * creditors of the dissolved partnership are also creditors of the person * * * so continuing the business."

[8] Were we to assume that the Michigan statute would control the equitable distribution of assets of a partnership (in spite of the fact that the statute merely establishes a rule of equity, and not a rule of property, and is without the terms of the federal Conformity Act), we think it is not substantially in conflict with the rule of equity prevailing in the federal courts. So far as the statute conflicts with the express terms of the Bankruptcy Act, the former, of course, must give way. With respect to the cited provisions of sections 27 and 30, it may be said that the dissolution of the partnership was not essential to the federal rule which we have above stated. Huiskamp v. Moline Wagon Co., supra, 121 U. S. at page 323, 7 Sup. Ct. 899, 30 L. Ed. 971. The cited provision of section 40 is entirely consistent with the federal rule in equity, and the invoked provision of section 41 declares no distinc-

[3] Francis v. McNeal, 228 U. S. 695, 33 Sup. Ct. 701, 57 L. Ed. 1029, L. R. A. 1915E, 706; In re Telfer (C. C. A. 6) 184 Fed. 224, 106 C. C. A. 366; In re Samuels (C. C. A. 2) 215 Fed. 845, 132 C. C. A. 187; In re Wood (C. C. A. 6) 248 Fed. 246, 249 et seq., 160 C. C. A. 324.

[4] In re Filmar (C. C. A. 7) 177 Fed. 170, 100 C. C. A. 632. And see In re Turnock & Sons, 230 Fed. 985, 145 C. C. A. 179.

[5] In re Stringer (C. C. A. 2) 253 Fed. 352, 356, 165 C. C. A. 134.

tion between partnership and individual debts in the contingency there stated. Appellee concedes that the two mortgages would practically exhaust all of the bankrupt's estate. We are cited to no decision of the Supreme Court of Michigan construing the statute of that state as creating rights in partnership creditors greater than recognized by the federal rule.

We have not overlooked the fact that in In re Denning (D. C.) 114 Fed. 219 (a decision by Judge Lowell, which was cited by this court in Re Telfer, supra), the former partner of the bankrupt was denied the right to prove his claim for notes given him by the bankrupt on a sale to the latter of the former's interest in the partnership. But there it appeared that "on that date they were insolvent and may be supposed to have known their financial condition." Of In re Effinger (D. C.) 184 Fed. 728, it may be said, not only that the partnership seems to have been still existent at the time of bankruptcy, and not only the partnership, but each of the partners, were adjudicated bankrupts; but the claim in question, which was denied the right to share in partnership assets, was for money loaned by one of the partners to the firm in excess of the amount he was bound to contribute as his share of the capital.

[9] Not only does it not appear in the instant case that Johnston was or is insolvent, but, in our opinion, appellant's equities under the facts found here are superior to those of Johnston, at least to the extent of the six notes not yet due when purchased by appellant, and we think that for this reason he would be entitled to have his claim allowed to that extent at least. But, for the reasons otherwise stated, we think the claim should have been allowed in full.

The order of the District Court is therefore reversed, and the record remanded for further proceedings in accordance with this opinion.