WELDON v. STATE.

## Opinion delivered November 7, 1921.

1. CONTEMPT—POWER OF COURTS.—By the common law, a court may punish as for contempt insults offered to the person of the judge in consequence of his judicial acts, though offered on a day when court was not in session and at a place where court could not legally be held.

2. CONTEMPT—CONSTRUCTIVE CONTEMPTS.—Const. 1874, art. 7, § 26, providing that "the General Assembly shall have power to regulate by law the punishment of contempts not committed in the presence or hearing of the courts, or in disobedience to process," and Crawford & Moses' Dig., § 1485, providing that punishment for contempt not so committed "shall in no case exceed the sum of $50 nor the imprisonment ten days", have no application to contempts committed by offering physical violence to the person of the judge at a time and place when the court was not in session, if designed to influence, intimidate or control the action of the judge in the subsequent trial of a case, as such acts would be considered as done constructively in the presence of the court.

Certiorari to Garland Circuit Court; *W. B. Sorrels,* Judge, on exchange; affirmed.

*Thos. S. Downey* and *Harry H. Myers,* for appellant.

The alleged contempt was not committed in the presence of the court. A judge alone does not constitute a court. 8 A. & E. Enc. Law (2nd Ed.) 22; 22 Neb. 280. A court is an official assembly, legally met together for the transaction of judicial business. 79 Ind. 376; 87 Ala. 330. Indignities offered to a judge in vacation, when not engaged in judicial business, and without reference to his official conduct, are not punishable for contempt. 9 Ark. 258.

Section 1484, C. & M. Digest, has reference to acts occurring within the presence of the court, or having reference to its processes.

Even if guilty of contempt, the punishment is excessive and unreasonable. Sec. 1485, C. & M. Digest.

The fact that the defendant was notified by citation is conclusive that the act complained of was one commit-

ted without the presence of the court. Sec. 1496, C. & M. Digest, and the punishment to be assessed is provided by § 1485, C. & M. Digest.

*J. S. Utley,* Attorney General; *Elbert Godwin* and *W. T. Hammock,* Assistants.

The assault was occasioned by litigation then pending before the court and was such contempt that the court was authorized, under the law to punish petitioner summarily. 9 Ark. 259; 139 N. C. 95; 2 L. R. A. (N. S.) 603. Contemptuous conduct toward a court while in discharge of a judicial duty is not limited to acts committed in the presence of the court, but includes insolent conduct during the intermission of court. 105 Iowa 7; 75 N. W. 685; 21 Fed. 772; 6 R. C. L. Sec. 5, p. 492 and notes. The punishment meted out in this case was not limited by § 1485, C. & M. Digest, as contended by petitioner. A similar punishment was sustained by this court for intimidating a litigant which act of intimidation was not in the presence of the court. 123 Ark. 341.

SMITH, J. This proceeding grew out of the following citation which issued out of the Garland Circuit Court:

"Whereas, on the 4th day of July, 1921, Charlie Weldon, in the County of Garland and State of Arkansas, made an assault on the person of the Hon. Scott Wood, judge of this court, and whereas said assault was without provocation and was prompted by malice by the acts of said judge in the performance of his judicial duties in a case pending in this court wherein the State of Arkansas is plaintiff and Charlie Weldon and others are defendants, and said assault was made with the intent to intimidate said judge and deter him from the performance of his duties in the trial of said case; it is therefore ordered that an attachment of contempt of court be issued for the said Charlie Weldon, and that he be requested to appear at the next regular day of the present term of said court on the 13th day of July, 1921, and show cause if any he have why he should not be punished for said contempt."

An agreement of exchange of courts was made between the judge of the Garland Circuit Court and W. B. Sorrels, judge of the Eleventh Circuit, and the matter was heard on the return day of the citation before the last-named officer. The case coming on for hearing, defendant Weldon, who will hereinafter be referred to as the petitioner, was found guilty as charged, and his punishment fixed at imprisonment in jail for three months and a fine of $500. Petitioner has by certiorari brought before us the record of the court below for review.

Judge Wood testified that the court over which he presided had taken a recess from the Saturday before the 4th of July to the 13th of that month, and that he spent the 4th at a bathing place called Arbordale Springs, eight miles from Hot Springs, the county seat; and that, as he came from the water, and was standing outside a dressing booth waiting to get in, he noticed petitioner walking toward him, and as petitioner came up he said to witness, "You are a smart guy," and struck at the judge. The judge said, "What is the matter with you? You are crazy; you are a fool." Petitioner said, "Did you hear what he called me?" The judge denied having called petitioner any name. The judge testified that he said to petitioner, "I know what you are doing this for; you think you can bully somebody," or "you are doing it because I did in my official capacity have to try you."

The petitioner used vulgar language toward the judge and called him some names, and asked, "What have you got it in for me for? What have I done to you?" but never denied that he was acting for the purpose of which the judge accused him, and made no response to the statement of the judge. The judge and the petitioner struck at each other, then clinched, but were separated without either having inflicted any bodily harm on the other. The judge further testified that he had only seen the petitioner in court, and had never before had any conversation or communication with him. He stated that petitioner had been indicted in his court for manufacturing intoxicating liquors, but an agreement

had been made between petitioner and the prosecuting attorney that the charge should not be tried until a similar charge had been disposed of in the Federal court. Petitioner was convicted in the Federal court, but that conviction was reversed in the Federal Court of Appeals. Whereupon petitioner was put on trial in the Garland Circuit Court. There was a mistrial, and, in dismissing the jury, Judge Wood, who had presided, made the remark that the case would be set for another day and tried until a verdict was reached.

Petitioner testified that he spoke to the judge civilly, who responded by saying, "Hello, mooner," meaning thereby to call him a "moonshiner," and that this offensive epithet of the judge caused the difficulty which then ensued.

Each of these witnesses was corroborated in several material respects, but, without further reciting the testimony, we announce the conclusion that the finding of the trial court is supported by the testimony. *Ex parte Winn,* 105 Ark. 193.

It is insisted that the judgment of the court below must be quashed and the proceeding dismissed because the incident herein set out occurred on a day when the court was not in session, and at a place where a session of the court could not be legally held, and further that, as the conduct complained of did not take place in the actual presence of the court, the punishment imposed is without authority of law, and is, in any event, in excess of that permitted by the law.

It is true that the incident complained of did not occur on a day when the Garland Circuit Court was in session (*Light* v. *Self,* 138 Ark. 221), although it did occur before the adjournment of the court for the term. It is also true that the incident occurred at a place where court could not be legally held (*Mell* v. *State,* 133 Ark. 197). But are these facts conclusive of the question presented on this appeal?

Section 1484, C. & M. Digest, provides that every court of record "shall have power to punish as for crim-

inal contempts persons guilty of the following acts,''
and there follows in five paragraphs an enumeration of
acts declared to constitute contempt of court.

This section is taken from section 37, chapter 43,
of the Revised Statutes of Arkansas; and no change ap-
pears to have been made in it except that as approved
(February 28, 1838) it read: ''Every court of record
shall have power to punish as for criminal contempts
persons guilty of the following acts, and no others,''
and thereafter follow the five paragraphs as they now
appear in section 1184, C. & M. Digest.

The words, ''and no others,'' have been eliminated
from the statute. This was done by Josiah Gould in
the digest of the statutes prepared by him in 1858, and
in a note to the section where this omission first occurs
the digester has the following explanation: ''The words,
'and no others,' are stricken out as not binding on the
courts. See *State* v. *Morrill,* 16 Ark. 384, and cases
there cited.''

The facts in the case of the *State* v. *Morrill,* 16 Ark.
384, were that Morrill had published an article in a
newspaper reflecting upon a decision of the Supreme
Court and apparently attributing the decision to ex-
traneous influences. In response to the summons which
there issued, the defendant filed a plea to the jurisdic-
tion, submitting that the publication was not embraced
within the statute regulating the punishment of con-
tempts. Speaking for the court, Chief Justice ENGLISH
conceded that the act charged against the defendant was
not embraced within any clause of the statute. The in-
sistence was made by counsel for the defendant that the
court must look to the statute for its power to punish
contempts, and not to any supposed inherent power of
its own springing from its constitutional organization,
and that the courts were controlled by this statute, and
could not go beyond its provisions. The Chief Justice
proceeded to answer and to refute this insistence in an

opinion evincing great research and learning. He quoted from the opinion of this court in the case of *Neel* v. *State,* 9 Ark. 263, as follows:

"By the common law, a court may punish for contemptuous conduct toward the tribunal, its process, the presiding judge, or for indignities to the judge while engaged in the performance of· judicial duties in vacation, or for insults offered him in consequence of judicial acts; but indignities offered to the person of the judge in vacation, when not engaged in judicial business, and without reference to his official conduct, are not punishable as contempts."

The opinion in the Neel case is one of equal erudition, and the two, together, so thoroughly discuss the common-law doctrine of contempt that this writer is unequal to the task of adding anything to the discussion, and the two opinions, together, make it clear that courts have power to punish for contempt as a necessary incident to the exercise of their express powers, and that in doing so statutory authority need not be sought or found to warrant that action.

It is insisted, however, that our present Constitution has deprived the courts of this power, and that since its adoption the courts must look to the statute for authority to punish for contempt except those committed in the immediate presence or hearing of the court, or in direct disobedience to its process.

The provision of the Constitution referred to is section 26, of article 7, and reads as follows: "The General Assembly shall have power to regulate by law the punishment of contempts not committed in the presence or hearing of the courts, or in disobedience to process." Section 1483, C. & M. Digest.

A similar contention was made in the case of *Turk and Wallen* v. *State,* 123 Ark. 341. There Turk and Wallen were never shown to have been at any time in the actual presence of the court. On the contrary, it affirmatively appears that the conduct complained of, to-wit, the intimidation of a litigant from appearing in

court and prosecuting his suit there pending, was committed "before reaching the courthouse." It was there insisted that, as the offense with which Turk and Wallen were charged "was not committed in the presence or hearing of the court, and was not in disobedience of any process of the court, its power to punish was exceeded in the fine and imprisonment assessed," inasmuch as section 1485 C. & M. Digest (sec. 721 Kirby's Digest) provides that punishment for contempts not so committed "shall in no case exceed the sum of $50 nor the imprisonment ten days."

Answering this insistence, Mr. Justice KIRBY, for the court, said: "It is universally held that intimidating a witness and preventing his appearance at court or procuring him to absent himself from the trial is a contempt of court. Preventing the appearance of a litigant in court for the prosecution of a suit brought to enforce a right, by intimidation and threats, is such an obstruction of judicial procedure as renders absolutely worthless all process of the court, which is instituted for the enforcement and protection of the rights and the redress and prevention of wrongs of the litigants. It destroys the dignity and power of the court and brings the administration of justice into disrepute.

"Here a citizen appealed to the court for the redress of an alleged wrong only to find himself confronted by the wrongdoer and his associate on the day set for the trial, at the door of the court, and so intimidated with threats, that he found it necessary to absent himself from the court of justice to which he had appealed, and abandon the prosecution of his cause of action through fear.

"The conduct of appellants was a flagrant offense against the dignity and power of the court. whose arm is long enough and strong enough to keep open and unobstructed the way to its door to all who must invoke its authority, which is not limited in the right to punish offenses of this kind except by the infliction of such punishment as is commensurate with the the enormity of

the offense and calculated to preserve and uphold the dignity and honor of the court and its respect in the confidence of the people. *Ford* v. *State*, 69 Ark. 550. The court had jurisdiction to hear the proceeding and did not exceed its authority in the assessment of the punishment.''

If full faith and credit is given to that opinion, we think it must necessarily follow that petitioner is as guilty of contempt as were Turk and Wallen.

If intimidating a witness and preventing his appearance at court, is a contempt; if preventing the appearance of a litigant in court is such an obstruction of judicial procedure as constitutes contempt, why is it not contempt to be guilty of improper conduct designed and intended to influence and control the action of the court itself? The reasoning of Mr. Justice SCOTT in the case of *Neel* v. *State, supra,* is applicable here. He said: ''When, therefore, the common law deemed it so necessary for this great purpose, to protect the juror, the witness, the informer, the party, the jailer, the attorney, and other persons, many of whom might never again be called into a court of justice, it was not to be expected that it would fail to cover, with its complete armor, the presiding minister of the law's majesty, who would be so often exposed to similar trials. Not that any higher personal privileges were arrogated for him, than for the humblest of these, but because it was obvious that the principle, which suggested the protection of these, would, at least to the same extent, protect him, if it did not rise with the grade of the officer, and the majesty of the law be more degraded in the person of a higher than a lower officer, entrusted with its administration.''

In offering actual physical violence to the person of the judge, petitioner was in the constructive presence of the court, for he sought thus to influence, intimidate and control the action of the judge in the matter of re-setting his case for trial when the judge had again resumed the bench.

In the case of *Stuart* v. *People,* Scam. (Ill.) 395, the Supreme Court of Illinois said that in the class of constructive contempts would necessarily be included all acts calculated to impede, embarrass or obstruct the court in the administration of justice, and that such acts would be considered as done in the presence of the court. See also, *People* v. *Wilson,* 64 Ill. 196, 16 Am. Rep. 528; *Ex parte McCown,* 139 N. C. 95, 51 S. E. 597; 2 L. R. A. (N. S.) 603; *McCarthy* v. *Hugo,* 17 A. & E. Ann. Cas. 219, and the notes thereto in which cases supporting and opposing the view, that acts impeding the administration of justice will be held to be within the constructive presence of the court, will be found.

It follows, therefore, that the judgment of the circuit court must be affirmed, and it is so ordered.

HART, J. (dissenting). My dissent is based on the ground that Weldon did not commit contempt in the presence of the court, and therefore, under our Constitution, his punishment is fixed by statute at a fine not exceeding the sum of $50 and imprisonment not exceeding ten days in jail.

*State* v. *Morrill,* 16 Ark. 384, sustains the inherent common-law right of constitutional courts to punish for contempt, committed either in or out of the presence of the court.

The Constitution of 1874 did not attempt to restrict the power of constitutional courts to punish for contempt, whether committed in or out of the presence of the court.

Art. 7, sec. 26, provides that the General Assembly shall have the power to regulate by law the punishment of contempts not committed in the presence or hearing of the courts, or in disobedience of process. This section recognizes the inherent power of constitutional courts to punish for contempt, but gives the Legislature power to prescribe the punishment where the contempt is not committed in the presence of the court.

The court either was or was not in session when the contempt was committed. If it was not in session, I cannot see how there could be any contempt committed in

the presence of the court, either actual or constructive. If court was in session, the case would call for the application of the doctrine in *Turk* v. *State,* 123 Ark. 341. In that case the court was in session, and the contempt consisted in the defendant, by threats, preventing the plaintiff from appearing in the circuit court to prosecute his case. At the time the contempt was committed by the defendant the plaintiff was in the town where the court was in session for the purpose of attending the trial of his case on that day. The law does not take account of different parts of days. *Central Coal & Coke Co.* v. *Graham,* 129 Ark. 550. Hence the court said that he was constructively in the presence of the court when the contempt was committed.

The doctrine of constructive presence proceeds upon the theory that the misbehavior is committed where it takes effect. Where one puts in force an agency for the purpose of interfering with the administration of justice, he, in legal contemplation, accompanies the same to a point where it becomes effective.

So in the present case, if court had been in session, it would be said that the contempt was committed in the constructive presence of the court, although not at the courthouse. I cannot perceive how contempt could be committed, either in the actual or constructive presence of the court, when the court was not in session.

*Light* v. *Self,* 138 Ark. 221, is authority for holding that the court was not in session when Weldon committed the contempt. In that case the county court entered an order, ''Court adjourned until called by the judge,'' and at a later day attempted to amend the order of adjournment so as to make it read, ''The court will suspend until tomorrow and remain open until the business of the term is completed.'' This court held that this could not be done, because the court could not be kept in session by such an order.

The effect of the holding in that case is that any order made by a court not in session is void, and I can-

not conceive how contempt could be committed in the presence of the court, which was not a court, because not in session.

All courts, unless restrained by statute, may adjourn their sittings to a distant day. *Dunn* v. *State,* 2 Ark. 229, and *McVay* v. *State,* 104 Ark. 629. In *State* v. *Canal Const. Co.,* 134 Ark. 447, the court said that we have departed from the common-law rule that a term of court should be considered as one day, and that a court of record may adjourn from one day to a distant day. It was further stated that during the interim the court had no power to transact business.

Even under the dissenting opinion in the case of *Light* v. *Self, supra,* the contempt in the present case cannot be said to have been committed in the presence of the court. The dissenting opinion in that case proceeds upon the theory that the court was not adjourned by the order made. The dissenting opinion, however, recognized the power of the court to adjourn from one day to a distant day. When it has adjourned from one day to a distant day, I cannot perceive how it could be said to be in session for any purpose during the intervening days. If so, if a court should adjourn to a distant day for the purpose of holding a regular term of the court in another county in his district, it would follow, under the majority opinion, that contempt could be committed in the presence of the court, not only of the court which was actually being held, but also of the court which was adjourned.

The CHIEF JUSTICE concurs.