AL BISIGNANO, Petitioner, v. MUNICIPAL COURT OF DES MOINES et al., Respondents.

No. 46857.

896

June 18, 1946.

Rehearing Denied September 23, 1946.

Comfort, Comfort & Irish and Walter F. Maley, all of Des Moines, for petitioner.

Emmert, James, Needham & Lindgren, of Des Moines, for respondent.

Hale, J.— This proceeding in certiorari was brought by Al Bisignano, the petitioner, against the Municipal Court of the City of Des Moines and Harry B. Grund, one of the judges thereof, following a charge and conviction for contempt of court. The order for the writ issued out of this court on January 18, 1946. The contempt proceedings arose out of certain facts charged in substance in the rule to show cause issued by Judge Grund.

The facts so alleged are charged to be that about 2:30 o'clock in the afternoon of Saturday, January 12, 1946, said

Judge Harry B. Grund was in the Young Men's Christian Association building in Des Moines when he was approached by Al Bisignano, who is also known as Babe Carnero, who called to him to "Come here." The judge inquired, "Who are you talking to?" and Bisignano responded, "You." Bisignano and Judge Grund then walked to the hallway and Bisignano took hold of Judge Grund and began shaking him and calling him vile and profane names. As alleged, the petitioner is a large and powerful man, a former wrestler and pugilist, and was acting in an angry and violent manner, and he continued to insult Judge Grund and to use profane and obscene language. The judge then said to Bisignano, "Are you crazy?" and in answer was told, while the assault continued, "You gave them a warrant, you are in cahoots with those bastards, and you can't push me around and get by with it. I have too much on you. You got rich taking money from people to keep them out of the army. I ought to kill you."

It is charged that later in the day Bisignano, with his attorney, came to the draft board office, of which Judge Grund is chairman. The attorney alleged he was sorry the incident had happened and Bisignano said, in substance, that if Judge Grund would not tell what happened at the Young Men's Christian Association he would not tell what he knew on Judge Grund. Later Bisignano came back to the draft board office, where Judge Grund was alone, and the judge said to him, "What's wrong with you?" and in response he stated that Judge Grund was supposed to be his kind of people and asked why the judge signed a search warrant to have his (Bisignano's) place raided, and "Why didn't you tip me off?" He was informed that the judge would sign a search warrant for any citizen or peace officer if he swore under oath that the law was being violated.

The rule to show cause states that during this time there were pending in the Municipal Court of the City of Des Moines three cases involving the manager of the tavern known as Babe's. Among these three cases was a condemnation hearing. At the time of the said assault, and prior thereto, all these cases had been set for trial on January 14, 1946. The rule further alleges that the import of the assault and threats

was that Bisignano would tolerate no interference of any kind by Judge Grund in the sale of intoxicating liquor at the place known as Babe's, a tavern night club located in Des Moines; that Judge Grund had made no resistance and there was no quarrel or fight in the incidents referred to, but that the whole matter consisted of a physical assault committed by Bisignano upon the person of Judge Grund, with threats to intimidate him, arising out of the liquor case in the municipal court against the employees of Babe's tavern or taproom and the condemnation hearing, together with such assault and threats accompanied by the obscene, blasphemous, and profane language. The rule, dated January 15, 1946, directs that a copy thereof be served personally upon Al Bisignano by one of the bailiffs of the municipal court and the return of such service was made and filed.

Hearing was had in response to the rule, on January 18, 1946, and Bisignano, with his attorney, read into the record his so-called apology, with an affidavit therewith. Respondent then read the rule to show cause. The attorney for petitioner, defendant in the contempt proceedings, then stated:

"The defendant has a statement he would like to read to the Court. Following that we desire to file an affidavit of explanation and in addition, we desire to put on one or two witnesses on matters that we think are material.

"One of the things that the Court has charged in his statement is that there are three cases pending here in this Court against this defendant. We challenge that statement and we ask that the Court provide proof with reference to same because there are no cases here at the present time against this defendant. There was a case in December and he waived to the Grand Jury because I handled it for him myself before Judge Moore. That took every case against him away from this Court."

The petitioner then read a "statement of apology" as to "the incident that occurred in the Y.M.C.A." In this he said:

"I have been under a terrific strain for several weeks, due to the fact that I have been tied up in litigation in both this court and in other courts."

He continued:

"Furthermore only a few days before I had my controversy with you at the Y.M.C.A., some police officers came to my home and served a summons on my wife, who was then and is now in a delicate condition, and upon my four little children, the youngest of whom is only three and a half years old, involving the suit now pending against me in the district court. This youngster was only a few months old when the suit was filed. The combination of all of these things made me think that my family and I were being singled out and prosecuted. I, of course, have never been able to understand why my four little innocent children should be required to answer for my conduct, innocent or otherwise.

"I desire to and do therefore offer my apologies to the Court and repeat that I am sorry the incident occurred."

A witness (Dunagan) for petitioner testified to a conversation with respondent at the witness' office in the police station, in which respondent is claimed to have refused to sign a search warrant against one Joe Epstein, saying, "No, but I will sign a warrant for you to raid Babe's." In response to an inquiry by the court the witness testified that Epstein had been in the Army the past two years; that before he went in the Army he operated a place that had nickelodians, penny machines, and was "also in the punch board business"; that when he went to the Army he did not close his business, which is still maintained by his brother Julius.

Petitioner then read into the record an affidavit in which he tells what took place at the Y.M.C.A. building. An examination of this affidavit and of the apology referred to above discloses no denial of the assault and the vile language, but an attempt to explain. The statement of Bisignano contains much immaterial matter; a claim of favoritism related to him by Captain Dunagan; admits the alleged assault and use of epithets in somewhat milder form, and claims they were in response to the epithet "Dago" applied to him by the respondent. Bisignano further refers, in his affidavit, to the fact that he had talked to the judge about reports of his taking

money for keeping the boys out of the Army, and a part of his statement relates to conversations alleged to have been had between Mr. Comfort, his attorney, and Judge Grund relative to an apology to be made, none of which bears, to any great extent, upon the actual occurrences at the Y.M.C.A. building.

There was a further oral statement at this hearing by the respondent, material parts of which are included in the rule to show cause, but he reasserted that three cases were pending involving petitioner's tavern and that they were scheduled for trial the following Monday.

The statements by petitioner Bisignano were under oath, but those of the respondent, Judge Grund, were not.

This was the substance of the material matters that occurred at the hearing. Mr. Comfort, attorney for the petitioner, moved to dismiss the contempt proceedings for the reason that the court was without jurisdiction to entertain such proceedings and was without jurisdiction to impose any penalty, and under the decisions "this matter should be dismissed." This motion was overruled. The court continued the pending proceedings against Babe's tavern until January 28th. Respondent found petitioner guilty of contempt of court and imposed on him a six-months' jail sentence and a fine of $500. A warrant was issued stating "that the statements made by the court in the rule to show cause or statement of facts is based on the personal knowledge of the court, and such statements and circumstances, as fully set out in the rule to show cause, are the facts and circumstances upon which the court is now acting in the premises."

Petition for writ of certiorari was filed in this court January 18th, and on the same day order entered for issuance of the writ. Application for appointment of a special master in chancery to investigate certain facts set out in such application was made on January 23d. Petitioner claimed that the respondent herein agreed that there might be a private apology on January 14th and when no one would be present in the courtroom. Petitioner claimed further that there was a public broadcast of the contempt hearing, suggesting that respondent had changed his mind as to a private hearing.

To this petition for a special master in chancery to in-

vestigate and report findings of fact respondent filed resistance, denying that there was any broadcast direct from the courtroom but admitting a "record" was made for subsequent broadcast; denying that wiring the courtroom was pursuant to any agreement and that there was any arrangement for receiving an apology anywhere except in open court.

The petitioner assigns various errors, most of which are procedural in character and refer to provisions of chapter 536 on Contempts in the 1939 Code of Iowa (chapter 665, Code, 1946). We will note first the provisions of section 12541 (section 665.2, Code, 1946) as to acts constituting contempt. In that section the acts designated are six in number, of which we need notice only the first subdivision:

"1. Contemptuous or insolent behavior toward such court while engaged in the discharge of a judicial duty which may tend to impair the respect due to its authority."

There are other provisions in the following subsections not necessary to be noticed here.

Section 12545 (section 665.6, Code, 1946) provides that:

"Unless the contempt is committed in the immediate view and presence of the court, or comes officially to its knowledge an affidavit showing the nature of the transaction is necessary as a basis for further action in the premises."

Section 12546 (section 665.7, Code, 1946):

"Before punishing for contempt, unless the offender is already in the presence of the court, he must be served personally with a rule to show cause against the punishment, and a reasonable time given him therefor; or he may be brought before the court forthwith, or on a given day, by warrant, if necessary. In either case he may, at his option, make a written explanation of his conduct under oath, which must be filed and preserved."

Section 12547 (section 665.8, Code, 1946):

"Where the action of the court is founded upon evidence given by others, such evidence must be in writing, and be filed and preserved."

Section 12548 (section 665.9, Code, 1946):

"If the court or judge acts upon personal knowledge in the premises, a statement of the facts upon which the order is founded must be entered on the records of the court, or be filed and preserved when the court keeps no record, and shall be a part of the record."

Section 12549 (section 665.10, Code, 1946) provides for warrant of commitment, and 12550 (section 665.11, Code, 1946) provides for review by certiorari.

I. The first error assigned by the petitioner is that the respondent failed to file affidavit as required by statute and therefore never acquired jurisdiction of petitioner. Petitioner asserts that the statement made by respondent was not sworn to, nor was the rule to show cause, nor the statement made by the respondent later, nor the resistance to application for order, nor was respondent under oath at the time he read the rule to show cause.

We have referred to the statute, section 12545. Petitioner cites State ex rel. Arthaud v. District Court, 124 Iowa 187, 99 N. W. 712. The opinion cited fails to support petitioner's objection. The statute requires that the affidavit is necessary *except* when the transaction is in the immediate view of the court or comes officially to its knowledge; otherwise it is unnecessary. No affidavit was necessary. The contempt charged in this action was in the immediate view and presence of the court and it came officially to its knowledge. It is provided in section 12540, Code, 1939 (section 665.1, Code, 1946), in the chapter on Contempts: "Any officer authorized to punish for contempt is a court within the meaning of this chapter." The petitioner was given a complete statement of the facts upon which the judgment was based, and opportunity to make his explanation, which he made before the court's decision, and opportunity for argument of counsel. There was compliance with the statute and no prejudice to the petitioner. Petitioner was fully informed, knew the charges against him, appeared and made his written explanation, and made no objection to the failure of respondent to verify the charges.

"It is the almost universal rule that, where a contempt is direct, in the immediate presence of the court, summary punishment may be inflicted without affidavit, pleading, or formal charges. In such cases, a formal entry showing the facts constituting a contempt and the proceedings taken constitutes the full record." 17 C. J. S., Contempt, section 71.

II. Petitioner charges as error that the judgment and commitment were illegal and in excess of jurisdiction for the reason that the evidence upon which the order of commitment was made was taken down in shorthand but was not filed or preserved of record and was therefore in violation of sections 12547 and 12548 of the Code. As stated, Code section 12547 provides that where the action of the court is founded upon evidence given by others, such evidence must be in writing, be filed and preserved; but in this case respondent's action is not founded upon evidence by others, and the only statutory requirement here is that of section 12548, which requires that the statement of facts upon which the order is founded must be entered of record in court. Even if the complaint of petitioner were meritorious there is no showing of prejudice nor is there any claim thereof. Petitioner cites various cases in support of his contention. We have examined all of the cases cited, with others, and none applies to the facts in the instant case.

In the case at bar the evidence was fully preserved and made a matter of record. The acts charged to constitute contempt occurred January 12th, the citation was issued January 15th, the hearing occurred on January 18th, the cause was reported, the reporter's notes were certified by her on January 18th, and on the same day certified by the judge, and the complete transcript was filed January 21st. The rule to show cause, with attached copy of the charges against petitioner, and the statements or explanations made in the hearing, and the entire record were before petitioner, and are before this court. See Lutz v. Aylesworth, 66 Iowa 629, 632, 24 N. W. 245, 246, in which it is said:

"We think, however, that there was a substantial compliance with the requirement in the present case. * * * It is true

that the only writing made at the immediate time of the transaction was the short-hand reporter's notes. But these were afterward extended, and what was filed and preserved was the transcript made by the reporter. But, as it contains a statement of the very facts which the statute requires the judge to embody in the statement which he is required to file and preserve, it answers every purpose of the statute.''

See, also, Roberts v. Fuller, 210 Iowa 956, 229 N. W. 163, and cases cited.

The charges were filed in ample time and served on petitioner several days before the hearing. The entire record was taken down, transcribed and certified, and transmitted to this court. No objection to this procedure was made in the municipal court at any time during the hearing. The objection is not valid.

 III. Petitioner next urges that the order of commitment was illegal and in excess of jurisdiction, stating as a reason, that such order failed to state the particular facts and circumstances upon which the court acted, and whether same was in the knowledge of the court or proved by witnesses. Citing section 12549, Code, 1939.

The purpose of section 12549 is to preserve a record of the reason for the judgment of the court. The section requires that the warrant must state the facts and circumstances upon which the court acted, whether the court acted upon its own knowledge or on proof by other witnesses. The requirement is satisfied if these facts appeared in the record. Teasdale v. Anderson, 196 Iowa 673, 195 N. W. 231; Lutz v. Aylesworth, supra. And, as a matter of fact, the facts and circumstances do appear in the warrant of commitment by reference therein to the rule to show cause. · It contains a full statement of the facts and shows that the conviction is based on the personal knowledge of the court. We hold that the objection does not apply to the facts in this case.

 IV. Petitioner argues that the evidence in a proceeding of this kind must be clear, satisfactory, and convincing, and that the evidence herein is not of that character. But we are convinced that the record, much of it practically undisputed, satisfies this requirement. It is not denied that an

assault, accompanied by vile language, was committed, and though in some details petitioner's account varies from that of the charges made in the rule, it does not differ greatly. It is further admitted in petitioner's statement or affidavit that the matter was begun by Bisignano, that he reproached Judge Grund for his alleged official misconduct, especially in litigation in which he and his family were concerned, and compared his acts with those of other judges; suggested rumors of misconduct in relation to his acts as a member of a draft board, and did not deny offensive language and violent conversation in the latter part of the interview, and in explanation stated that he had been under a strain for several weeks, having been tied up in litigation both in "this court" (municipal) and other courts, and that the combination of events accompanying the litigation "made me think that my family and I were being singled out and prosecuted. I * * * have never been able to understand why my four little innocent children should be required to answer for my conduct, innocent or otherwise." These statements not only confirm the fact that he had an interest in the proceedings then pending but are also sufficient to convince us that the substance of the charges made in the rule to show cause, and satisfactorily proved, are sufficient alone to justify the finding of contempt of court, and this would be sufficient without consideration of the subsequent acts and conduct of the defendant on the afternoon of the encounter at the Y.M.C.A. building. The fact that the other matters are contained in the charge made in the rule to show cause does not affect the result as there is therein clear and satisfactory evidence to sustain such charge. Russell v. Anderson, 141 Iowa 533, 120 N. W. 89, and cases cited. We have examined the authorities cited by the petitioner and find therein nothing in conflict with our views here. The case of Haines v. District Court, 199 Iowa 476, 202 N. W. 268, cited by petitioner, refers to an entirely different type of claimed contempt from the one at bar. It involves a publication criticizing certain published opinions of a judge as to his literary style, that involved no pending litigation, nor did it assail his official conduct. The evidence here is clearly sufficient to warrant the court's finding.

V. It is claimed that matters alleged in the charges made in the rule to show cause did not occur in the presence of the court or at a time when the petitioner had any cases pending before the court or the respondent judge. This complaint contains two separate propositions which we will consider separately.

The municipal court is always in session. Code section 10663 (section 602.22, Code, 1946). Like any court, it is necessary at times to have recess or intermission. The judge is, at times, temporarily absent. In offering physical violence to the person of the judge the petitioner was, at the least, in the constructive presence of the court, and assaults committed in the presence of the court or so near thereto as to disturb administration of justice, or assaults upon a judge, juror, attorney, witness, or officer of the court because of the performance of his duty in connection with court proceedings, or to deter him from such performance in the future, have, in numerous cases, been punished as contempts of court. 12 Am. Jur., Contempt, section 10. We are satisfied that an assault such as the one in the case at bar is such contemptuous or insolent behavior as to tend to impair the respect due to the court's authority as provided by paragraph 1 of section 12541. The courts have frequently held that an assault upon a judge constitutes such conduct. See Weldon v. State, 150 Ark. 407, 234 S. W. 466, 18 A. L. R. 202, wherein it is held that an assault upon a judge during intermission of a court, at a place other than where the court is held, because of his official conduct with respect to a case on trial before him, is a contempt which the court has inherent power to punish. In this case the assault took place during a recess of court, at a place eight miles from the county seat. See Turquette v. State, 174 Ark. 875, 298 S. W. 15, 55 A. L. R. 1226; In re Fountain, 182 N. C. 49, 108 S. E. 342, 18 A. L. R. 208, annotation 212.

See, also, Ex parte McCown, 139 N. C. 95, 51 S. E. 957, 2 L. R. A., N. S., 603. In that case the offense consisted of abusing and assaulting the judge, after he had retired from the courtroom during recess of the court, because of his action in the case before him, and it was held to be a direct contempt

within the meaning of the statute defining such contempt as disorderly, contemptuous, or insolent behavior committed during the sitting of any court of justice, in immediate view and presence of the court, and directly tending to interrupt its proceedings or to impair the respect due to its authority. In said opinion the case of United States v. Anonymous, 6 Cir., Tenn., 21 F. 761, was cited as holding that it was not necessary the offensive act should have been committed in the immediate presence of the court while actually sitting in the courthouse with the judge on the bench; but, though merely constructive, because of the place where it is committed, it becomes a thing done in the view of the court, within the meaning of the statute, if it affects an officer in the discharge of his duty and directly tends to obstruct the proceedings of the court or the administration of justice. In conclusion the court holds, after reviewing the authorities, that the conduct complained of was a direct contempt of the court, as much so as if the assault had been made when the judge was sitting on the bench in open court.

The McCown case cites Steube v. State, 3 Ohio Cir. Ct. 383, In re Brule, 71 F. 943, and other cases, and, in its review of these cases, states, at page 120 of 139 N. C., page 966 of 51 S. E.:

"How, we ask, can the mere element of distance change the character of the act or take from it the quality of being a direct offense against the authority of the court and a palpable obstruction to the administration of justice? A ruling which would ignore the complete identity of the two kinds of offenses would sacrifice the substance to the form."

One of the early cases in this country was that of the Commonwealth v. Dandridge, 1824, 2 Va. Cas. 408, where the offense consisted of an insult to the judge during a recess of court, in which the defendant's action was held to be a contempt and his conviction sustained.

Petitioner cites Ex parte Ballew, 20 Okla. Crim. Rep. 105, 201 P. 525. The court in that case, however, said that under the statute the judge was without authority to punish as for contempt and the case is not an authority in this proceeding.

We are satisfied that the courts generally have held as we have indicated, and such also appears to be the rule indicated by our prior opinions. In Dunham v. State, 6 (Clarke) Iowa 245, 255, this court said that the contemptuous and insolent behavior need not be in the courtroom and under the eye of the court in order to amount to a contempt, "But, the court being in the discharge of its judicial duties, the guilty party, though not in its immediate presence, might do those things which would amount to a contempt."

In the case of Field v. Thornell, 106 Iowa 7, 11, 75 N. W. 685, 687, 68 Am. St. Rep. 281, the contempt arose out of the action of a man distributing newspapers to members of the jury while the case was in progress. The opinion was by Justice Ladd of the supreme court and sets out fully the reasons and necessity of the power of contempt. The contention was that the particular offense of which he was adjudged guilty is not included in the terms of the statute. This court held that it came within the purview of subdivision 1, section 4460, Code, 1897, now section 12541, Code, 1939, which provides for the punishment of contemptuous or insolent behavior toward such court while engaged in the discharge of a judicial duty which may tend to impair the respect due to its authority. The court said:

"The language of the statute does not require us to adopt a construction which will cripple the administration of justice, and deprive parties and the state of the hearing of causes unmolested by extrinsic influences, whether within or without the actual presence of the court. * * * But it is asserted that the words 'while engaged in the discharge of a judicial duty' limit such behavior to the time the court is actually in session, and to acts committed in its presence. If so, then during the intermission of court, while the trial is in progress, the jurors may be approached by friend or foe of the litigant parties, witnesses, and officers denounced or intimidated, and the judge threatened or insulted with impunity. We shall not inquire whether the legislature may thus deprive the judiciary of powers necessary to enable it to perform the duties conferred by the constitution, because such an intention will not be imputed to that body. If the statute may be said to be subject to two

constructions, that in harmony with the dictates of sound public policy will always be preferred to one inimical to the public good. The court throughout a trial is 'engaged in the discharge of a judicial duty.' The necessities of nature require temporary suspension of the proceedings, for all must eat and sleep. But the judicial duty is not performed until the particular case is disposed of. The purpose of the statute is that during the pendency of specific legal proceedings the court shall be permitted to administer the law according to approved rules and precedents, without molestation or interference."

Later, on page 14 of 106 Iowa, page 688 of 75 N. W., the court said:

"We have discovered no authority denying the power of a court to punish as contempt an act which tends to impede, embarrass, or obstruct it in the discharge of its duties. The necessity for this power is that the law may be fairly and impartially administered, uninterrupted by any influence affecting the safety or tending to direct the conclusion of the judge or jurors, or preventing or interfering with the officers of the court, or intimidating or coercing witnesses in giving their testimony."

The language of that opinion seems so thoroughly in point that it requires no addition on our part. We think it clearly demonstrates the application of the statute to the facts in this proceeding.

Both parties cite Harding v. McCullough, 236 Iowa 556, 558, 19 N. W. 2d 613, 616, the recent opinion of Justice Garfield. This case cites Field v. Thornell, supra, and states that, while it is a power inherent in the courts of record to punish for contempt, such power is regulated by statute which limits its operation to acts therein specified. (Citing cases.)

"However, the statute, Code sections 12541, 12542, probably includes every type of situation in which, without statute, the court would resort to the summary remedy of contempt." (Citing cases.)

██ As a part of the same assignment by the petitioner it is urged that the occurrence was at a time when he did not

have any cases pending before the court or the respondent judge. The charge made in the rule was that during this time and at the present time there were pending in the Municipal Court of the City of Des Moines three cases involving the manager of the tavern and night club known as Babe's, and among these three cases is a condemnation hearing. Counsel, however, makes a technical point that there was no case pending against petitioner and disclaims that his client was personally involved in the condemnation proceeding, but that is not a denial of the charge in the rule. It does not deny that this claimant had a personal interest in matters pending in the court. No one can read the record in this proceeding without concluding that the petitioner had a very deep interest in the proceedings then pending in Judge Grund's court. They were, at the time of the assault, set for hearing. Later, at the conclusion of the contempt proceeding, they were postponed to a future date, but there is no doubt that proceedings were then pending and that they personally affected the petitioner herein and that there is a very decided inference that his interest was not only personal but financial.

■ VI. We do not find, as a matter of law, that the record shows respondent judge acted to satisfy personal grievances or that he was prejudiced and was disqualified to act. There was an interval of six days between the offense and the hearing. There was nothing in the testimony to indicate that his action was anything more than would be expected and would be the duty of any judicial officer in his situation.

■ The court stated his regret that the law did not provide for some other court to hear this kind of case and stated also that he wished some other judge had to do the job. Apparently the court was under the impression that no other judge could act in the premises. He was mistaken in this. He could have called in another judge and he might well have done so. See Cooke v. United States, 267 U. S. 517, 45 S. Ct. 390, 60 L. Ed. 767, 775. And under Code section 10664 (section 602.23, Code, 1946) it is provided that the provisions of law relating to district courts shall apply to municipal courts, and Code section 10796 (section 604.36, Code, 1946) provides

that district judges may interchange. See Drady v. District Court, 126 Iowa 345, 353, 102 N. W. 115.

VII. Petitioner complains that his constitutional rights were violated by reason of the wiring of the courtroom and subsequent broadcast of the contempt proceedings or a part of such proceedings. He cites Haines v. District Court, supra, but we do not find that that decision applies to the facts in the case here, nor do we have any reason to believe that petitioner's constitutional rights were involved, and we are satisfied that what was done in connection with the broadcast was not prejudicial to the petitioner. But we cannot approve this form of publicity of proceedings in court.

Rule 53 of the new Federal Rules of Criminal Procedure forbids the taking of photographs during the progress of judicial proceedings or radio broadcasting of such proceedings from the courtroom. It is a rule that every court should follow, whether federal or otherwise, and in either criminal or civil proceedings. A trial of any kind and in any court is a matter of serious importance to all concerned and should not be treated as a means of entertainment. To so treat it deprives the court of the dignity which pertains to it and departs from the orderly and serious quest for truth for which our judicial proceedings are provided. We condemn any such departure from the established rules which have been shown by experience to be the only correct and proper means for the conduct of judicial hearings.

VIII. Defendant charges that the judgment of imprisonment is illegal in that he was deprived of the right of trial by jury. We have held contrary to this contention. Drady v. District Court, supra; Jones v. Mould, 151 Iowa 599, 605, 132 N. W. 45; State v. Baker, 222 Iowa 903, 905, 270 N. W. 359.

We hold that the writ of certiorari should be annulled and the judgment of the municipal court affirmed.—Writ annulled; judgment affirmed.

All JUSTICES concur.