Joseph E. BROWN, Appellant,

v.

DISTRICT COURT OF WEBSTER COUNTY, Iowa, Appellee.

No. 52786.

Supreme Court of Iowa.

May 7, 1968.

Johnson, Burnquist & McCormick, Fort Dodge, for appellant.

David A. Opheim, County Atty., and R. Thomas Price, Asst. County Atty., Fort Dodge, for appellee.

BECKER, Justice.

Petitioner has filed application for writ of certiorari to review defendant's order finding petitioner guilty of contempt of court. This procedure is provided in Iowa Code, 1966, section 665.11: "Revision by certiorari. No appeal lies from an order to punish for a contempt, but the proceedings may, in proper cases, be taken to a higher court for revision by certiorari."

In 1966 petitioner was involved in a real estate contract forfeiture case. He was vendor seeking to forfeit the contract. Defendant, as trial judge in that case, entered

an order dismissing petitioner's complaint. The explanatory portion of the ruling read: "That this was an unusual real estate transaction; that it was not handled according to the accepted rules and regulations binding upon real estate brokers. Also, that the defendants were lulled into a sense of security and failed to bring the contract up to date within the thirty day period. The defendants' offer to bring the contract up to date as of the time of trial should be accepted, and it is so ordered."

Apparently the vendees did not make up their delinquent payments and petitioner was disturbed. He took ill advised action. He and his wife executed a deed conveying the real estate in question to Judge Kelley. The face of the deed contained the typed assertion, "This conveyance is subject to contract recorded in mortgage record * * *"

"This conveyance is made subject to a first mortgage to Conservative Mortgage Co. * * * in the sum of $14,500. * *; the unpaid balance of which, together with interest thereon, the grantees herein assume and agree to pay". Petitioner filed the deed in the recorder's office. He then forwarded the file marked original with the following letter, dated March 11, 1967. "Dear Sir: Enclosed you will find a deed to the property in Savage Addition. There is also an assignment of contract. I have enclosed the payment schedule and I am sure you will not mind making payments for the Martens as I have no further interest in the property, and would like to be relieved of my obligation.

"Due to the fact that you thought I was depriving these nice people of their interest, I'm sure you won't mind looking after them.

"The 1966 property taxes due and payable in 1967 have not been paid to date.

"A short note from you to them should take care of the matter.

"I hope you have better luck with these nice people than I have had, as I am over $400.00 in the red in this transaction.

"Yours truly,"

On March 29th, 1967 Judge Kelley and his wife executed a quit claim deed back to petitioner and his wife stating *inter alia* the former deed was erroneous, the judge and his wife disclaimed any relationship whatsoever to said property and obligations relating thereto and stated the recitals in the former deeds were erroneous.

This accomplished, on April 28 the Court entered an order to show cause why petitioner should not be held in contempt. Hearing was held Monday, June 12. Petitioner appeared with an attorney, took the stand, admitted he was angry because he couldn't get the vendees to pay up. It should be remembered petitioners had the Conservative Mortgage Co. payments to meet.

Petitioner said he hadn't intended to be disrespectful or insolent to the court, he had made a mistake, would be glad to write an apology or do anything else required to make amends.

Cross examination by the county attorney showed petitioner to have been a real estate broker for some eleven years and in the contracting business before that; he had been involved in land contract sales and also in litigation quite often. He again said he acted out of temper but not out of temper directed against the court.

Defendant then entered an order adjudging petitioner guilty of contempt and sentenced him to 30 days in jail to be served on four successive week-ends from Friday evening to Sunday morning. Hence defendant was actually sentenced to about six days in jail.

█ I. If petitioner's actions are considered to be a contempt of court, the contempt is indirect or constructive, as distinguished from direct contempt. "[L]etters or other written communications sent

through the mail to a judge necessarily seem to fall within the class of comtempts known as indirect or constructive contempts". 31 A.L.R. 1239; Bulcke v. Superior Court, 14 Cal.2d 510, 94 P.2d 1006, 1009.

If petitioner had contented himself with a letter of criticism, we would have no real difficulty with this case. As this court said in the early case of State of Iowa v. Dunham (1858), 6 Iowa 245, 256, "No court can or should hope that their opinions and actions can escape discussion or criticism. When a case is disposed of, and the decision announced, such decision becomes public property, so to speak. The construction given to a statute—the reasoning and conclusion of the court upon the facts—all go to the public, and become subject to public scrutiny and investigation. In such cases, it is perfectly competent and lawful for any one to comment upon the decision, and expose its errors and inconsistencies. If such comments do not correct errors, they will, at least, lead to renewed caution and circumspection upon the part of those whose duty it is to declare the law."

In Haines v. District Court, 199 Iowa 476, 480, 202 N.W. 268, 270, we said: "It is well settled in this state that the power to punish for contempt may only be exercised that the law may be fairly and impartially administered, uninterrupted by any influence affecting the safety or tending to direct the conclusion of the judge. Field v. Thornell, 106 Iowa 7, 75 N.W. 685, 68 Am.St.Rep. 281. So long as published criticism does not impede the due administration of the law, it were better that we maintain the guaranty of our Constitution than undertake to compel respect to punish libel by the summary process of attachment for contempt. State ex rel. Metcalf v. District Court, 52 Mont. 46, 155 P. 278, L.R.A. 1916F, 132, Ann.

Cas. 1918A, 985; State v. Sweetland, 3 S.D. 503, 54 N.W. 415; Cheadle v. State, 110 Ind. 301, 11 N.E. 426, 59 Am.Rep. 199.

"As indicated heretofore, our courts have not been drawn into the vortex of constructive contempts as defined by the earlier common law, and we have construed many of such acts to have no tendency to obstruct the administration of justice, but simply to wound the feelings or offend the personal dignity of the judge. The latitude of contempt which finds expression in the earlier decisions is not in harmony with the genius of our life or the spirit of our institutions. The primary purpose of a contempt proceeding is to vindicate the integrity and independence of the court. The judge is the judicial administrator, but it is not he who is aggrieved. His own personal feelings are not in the case. It is the court, not the individual."

In re Jameson, 139 Colo. 171, 340 P.2d 423, 428, the Supreme Court of Colorado said: "When a case is finished, courts and judges are subject to the same criticisms as other people and no comment published in connection with a completed case, however libelous or unjust is punishable as a contempt of court. The remedies of the judge who suffers abuse at the hands of the press are the same as those available to persons outside the judiciary. Pennekamp v. State of Florida, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295; In re Bozorth, 38 N.J.Super. 184, 118 A.2d 430." See also Wood v. Georgia (1962), 370 U.S. 375, 82 S.Ct. 1464, 8 L.Ed.2d 569.

II. But the petitioner did more than criticize, he acted.[1] The distinction between mere criticism and overt action is noted in the same Dunham case, loc. cit. p. 254 of 6 Iowa.

Petitioner placed of record a deed which transferred to defendant the very

---

1. This action takes the case out of the realm of the cases concerned only with critical publication. Bridges v. State of California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192; Craig v. Harney, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546; Wood v. Georgia, supra.

property upon which defendant had passed judgment. Defendant thus became the record title holder.

Iowa Code, 1966, section 665.2(1) includes as contempt: "Contemptuous or insolent behavior toward such court while engaged in the discharge of a judicial duty which may tend to impair the respect due to its authority."

III. Petitioner's action did not take the form of physical assault on the person of the court. It was none the less action which tended "to impair the respect due to its authority." The uncorrected public record could be viewed as recorded evidence of wrongdoing.

Mr. Brown and his wife deeded property to defendant with the gratuitous, and false, assertion that defendant had assumed the mortgage constituting a lien on the property recently the subject of litigation before the judge to whom he deeded the property. He thereby created a situation which went far beyond being mere published criticism. The action affected the court as an institution. Harding v. McCullough, 236 Iowa 556, 19 N.W.2d 613. The deed itself was published in one of the most effective ways known to our laws; that is, by filing with the county recorder for official public notice. Petitioner required defendant, and his wife, to take overt action to divest themselves of claim of title to the property, to assert in a written instrument that statements in the original deed were false and to record the instrument at the recorder's office.

Mr. Brown's action was entirely inconsistent with the orderly administration of the court. Judge Kelley correctly ordered petitioner to show cause why he should not be punished for contempt of court. Absent prompt action to protect the good name and integrity of the court, plaintiff had made a public record entry (presumptively true) of the court's improper interest in the subject of its decision.

IV. Our rules of review were recently set forth in America Security Benev. Ass'n v. District Court, 259 Iowa 983, 147 N.W.2d 55, 59, "Contempt proceedings are commonly treated as criminal in nature even when they arise in civil actions. While proof of the acts constituting the contempt need not be beyond a reasonable doubt, clear and satisfactory proof is required. Huston v. Huston, 255 Iowa 543, 549, 122 N.W.2d 892, 896, and citations; Brody v. District Court, 250 Iowa 1217, 1221, 98 N.W.2d 726, 729, and citations.

" 'We have held in several certiorari actions questioning a judgment of contempt that we will review the evidence for the purpose of determining whether proof of the contempt is clear and satisfactory. The cause is not triable de novo here but the judgment does not have the full force and effect of a jury verdict. While we give weight to the trial court's findings we are not bound by them.' Huston v. Huston, supra.

"It is for this court to say, having due regard for the findings below, whether the contempt has been clearly and satisfactorily shown."

Petitioner appeared as ordered and testified under oath that he had no intention either to embarrass, offend or cause any grief to the judge. He apologized and offered to do anything necessary to make the matter right. Apology or mere denial of intent to embarrass or impede the operation of the court does not in itself purge petitioner of contempt, Pennekamp v. State of Florida, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295; State v. Waugh, 53 Kan. 688, 37 P. 165; Bisignano v. Municipal Court, 237 Iowa 895, 23 N.W.2d 523, Annotation, 31 A.L.R. 1239, 1243, 1244.

Mr. Brown was an experienced real estate man. He is charged with knowledge that the judge, and the judge's wife, would have to take affirmative action to divest themselves of title to the property to which they laid no claim. Al-

though the litigation involving this property appeared to be over for the time being, petitioner resurrected the court's concern with the matter by his action. The court properly found defendant guilty of contempt.

■ V. We think it necessary to add to what we said in Newby v. District Court, 259 Iowa 1330, 147 N.W.2d 886, 894. "Defendant could have asked another judge of the Fourth Judicial District (in which Woodbury County is situated) to hear and dispose of the alleged contempt and might well have done so even though not requested. Bisignano v. Municipal Court, supra, 237 Iowa 895, 910, 23 N.W.2d 523, 532, and citation; Drady v. District Court (Given), 126 Iowa 345, 353, 102 N.W. 115."

Where, as here, the alleged contempt does not occur in the immediate physical presence of the court under circumstances necessitating prompt action to protect the meaningful operation of the court, the judge at whom the behavior is directed should not hear and dispose of the matter himself but should call in another judge. This does not mean that trial courts do not have jurisdiction to so act but we strongly advise against such action as a matter of sound policy. The rationale for such procedure may be found in Cooke v. United States, 267 U.S. 517, 539, 45 S.Ct. 390, 69 L.Ed. 767.

■ VI. Section 665.4, Iowa Code, 1966 provides for punishment by fine not exceeding $500 or imprisonment in the county jail not exceeding six months or by both such fine and imprisonment. Our review is by certiorari under section 665.11: "Revision by certiorari. No appeal lies from an order to punish for a contempt, but the proceedings may, in proper cases, be taken to a higher court for revision by certiorari."

We have frequently reduced punishment ordered by the trial court where the judgment of this court dictated a less severe sentence. Newby v. District Court, 259 Iowa 1330, 147 N.W.2d 886; Carey v. District Court, 226 Iowa 717, 285 N.W. 236; Blunk v. Walker, 206 Iowa 1389, 222 N.W. 358.

In Newby v. District Court, supra, we said: "Under what is now section 665.4, subd. 2, and a statute (section 3222, Code, 1873) generally similar to R.C.P. 316, we reduced in certiorari the punishment imposed for contempt. The State v. Myers, 44 Iowa 580, 584, 585. And under the present statute and rule, supra, we reduced, in certiorari, the jail sentence. Jones v. Levis, 240 Iowa 602, 608, 35 N.W. 2d 891, 36 N.W.2d 756.

"In Battani v. Grund, 244 Iowa 623, 631, 632, 56 N.W.2d 166, 172, and Clark v. District Court, supra, 255 Iowa 1005, 1012, 125 N.W.2d 264, 268, we considered, in certiorari, the excessiveness of the punishment for contempt but sustained it. The trial court has a wide range of discretion as to the punishment to be imposed and we interfere with its exercise only where the discretion has been clearly abused."

It is the judgment of this court that the contemptuous actions did not reach such magnitude as to justify a jail sentence. The order, in addition to being unusual, was excessive.

As noted in Division I, contempt power may only be exercised that the law may be fairly and impartially administered, Haines v. District Court, supra. This purpose is relevant to the quantum of the punishment as well as to issue of contempt. In Re Jameson, supra, quotes with approval the remark of Mr. Justice Frankfurter in his dissent in Bridges v. State of California, 314 U.S. 252, 292, 62 S.Ct. 190, 208, 86 L.Ed. 192. "The purpose is to protect immediate litigants and the public from the mischievous danger of an unfree or coerced tribunal. The power should be invoked only where the adjudicatory process may be hampered or hindered in its calm, detached, and fearless discharge of its duty on the basis of what has been

submitted in court. The belief that decisions are so reached is the source of the confidence on which law ultimately rests."

We modify the order by changing the punishment from that ordered to a fine of $100. In default of the payment of such fine within 30 days after the issuance of procedendo by this court the petitioner is sentenced to six days in the Webster County jail. Costs of this action in district court and before this court are assessed to petitioner. With the judgment so modified the writ is annulled. Judgment modified and writ annulled.

All Justices concur.